773 A.2d 143

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Alfred MEANS, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 18, 1999.

Decided June 25, 2001.

Saylor, J., concurred and filed opinion.

Zappala, J., dissented and filed opinion joined by Flaherty, C.J.

Nigro, J., dissented and filed opinion.

Catherine Marshall, Hugh J. Burns, Jr., Philadelphia, for appellant Com.

Jules Epstein, Philadelphia, for appellee Alfred Means.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

CAPPY, Justice.

■ This is a direct appeal from an order of the Court of Common Pleas of Philadelphia County declaring portions of the Pennsylvania death penalty statute at 42 Pa.C.S. § 9711(a)(2) and (c)(2) unconstitutional.[1] The trial court invalidated the subsections at issue, finding they failed to establish sufficient procedural safeguards regarding the introduction of victim impact testimony during the penalty phase of a capital case. For the reasons that follow we reverse the decision of the trial court and remand for further proceedings.

On the evening of October 15, 1996, Mr. Rudd was walking along 52nd street in Philadelphia when he had the misfortune of encountering appellee and his accomplice. Mr. Rudd was knocked to the ground, beaten, robbed and then fatally shot in the chest. Appellee and his accomplice walked away from Mr. Rudd's body towards 51st Street. On 51st Street the assailants encountered Dr. Cooper who was planting a tree on his property. The two men attacked Dr. Cooper, beating him

[1]. This court has jurisdiction pursuant to 42 Pa.C.S. §§ 702(b) and 722(7). As this case involves the constitutional validity of a statutory enactment, which is purely a question of law, our scope of review is plenary. *Phillips v. A–Best Products*, 542 Pa. 124, 665 A.2d 1167 (1995).

with their guns and searching through his pockets for money. During the attack, appellee attempted to shoot Dr. Cooper several times, however his gun failed to fire. Eventually the gun did shoot; leaving a bullet permanently embedded in Dr. Cooper's leg.

While Dr. Cooper was being attacked, the police responded to a call of gunshots being fired in relation to the shooting of Mr. Rudd on 52nd Street. After discovering the body of Mr. Rudd on the sidewalk, the police came upon appellee and his accomplice during their attack on Dr. Cooper. The attackers fled in opposite directions, each with a policeman in pursuit. During the chase, appellee aimed his gun at the officer in pursuit several times, but the gun did not discharge. Both men were apprehended and charged with various offenses including first degree murder, robbery, conspiracy, possessing an instrument of crime and aggravated assault.

Appellee and his accomplice chose to proceed before the Court of Common Pleas non-jury. On October 9, 1997, appellee was convicted of first-degree murder and related charges.[2] On October 10, 1997, appellee presented a motion to exclude victim impact evidence from the penalty phase alleging that the sections of the statute which permitted the introduction of such evidence violated the due process, equal protection and cruel punishment provisions of the United States and Pennsylvania Constitutions. U.S. Const. Amend. VIII and XIV; Pa. Const. Art. 1 §§ 1, 9, 13, 26 and 28.[3] Following argument, the

2. The accomplice was convicted of second-degree murder.

3. Appellant asserts that the constitutional attack on the statute was limited to the "admission" of victim impact testimony under the Eighth Amendment. Appellant argues that the questions concerning the procedural mechanism for consideration of such testimony by the jury which raise concerns of due process and equal protection were raised *sua sponte* by the trial court. Thus, appellant urges that these concerns were not properly brought before the court and should be deemed waived. Appellant's allegation is not borne out by the record. The constitutional issues addressed by the trial court were pled and briefed by appellee in the *Motion to Preclude the Introduction of Victim Impact Statement and Declare Act No. 1995–22(SSI), Amending 42 PA.C.S.A. § 9711, Unconstitutional* and the supporting memorandum filed in the trial court on October 10, 1997. Nor is appellant's assertion that the Pennsylvania Constitution was not separately raised correct. Appellee

314

trial court sustained appellee's motion to preclude the introduction of victim impact testimony and declared subsections (a)(2) and (c)(2) of 42 Pa.C.S. § 9711 unconstitutional.

The trial court agreed with appellant that testimony concerning the impact of the victim's death on his family is relevant to the issue of penalty in a death case. However, the court invalidated the statutory subsections at issue, finding that insufficient guidance was provided to the jury on how to weigh the testimony of victim impact in the deliberative process. Looking to *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the trial court opined that due process requires a penalty proceeding that is structured to eliminate arbitrary and capricious actions by the jury when deliberating on the imposition of a death sentence. The trial court found such structure missing in the Pennsylvania statute. Specifically, the court pointed to the statute's failure to set forth a standard of proof, a requirement of unanimity, and an explanation of how within the deliberations of the jury victim impact testimony is to be considered. In addition, the court found that without a structure for the jury to channel its assessment of victim impact testimony, appellate review of the jury's sentencing determination would be severely impeded. Thus, the court concluded that the statutory sections at issue were not sufficiently restrictive as they opened the jury to arbitrary and capricious considerations in the sentencing process that would evade meaningful appellate review.

Given the trial court's refusal to permit the introduction of victim impact testimony, the penalty phase hearing and sen-

clearly brought averments of constitutional invalidity under both the United States and Pennsylvania Constitutions in the motion and memorandum and during oral argument. (Original Record Documents D7, D8; Hearing Transcript October 14, 1997 at p. 60; hereinafter "H.T."). As for appellant's further assertion that sufficient time to address these claims was denied, a thorough discussion on this point was held on the record. (H.T.37). We are unable to determine why appellant raises this issue as there is no current claim of prejudice resulting from limited oral argument, nor is there a request for remand for additional argument before the trial court. Insofar as appellant raises this matter without seeking a specific form of relief, we must conclude that any limitation in preparation time before the trial court has now been overcome and appellant has suffered no harm.

tencing on the remaining convictions was continued indefinitely.[4] Appellant sought immediate review of the trial court's decision. Appellant argues that the statutory subsections were improperly invalidated. Appellant asserts that victim impact testimony is not an aggravating circumstance, thus it need not be established according to a precise burden of proof, nor should it be subject to a requirement of unanimity. Further, there is no constitutional requirement that the jury be told how to conduct the weighing process. Appellant requests, therefore, that the decision of the trial court be reversed.

██ The constitutional validity of duly enacted legislation is presumed. *Commonwealth v. Swinehart*, 541 Pa. 500, 664 A.2d 957 (1995). The party seeking to overcome the presumption of validity must meet a formidable burden. *Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162 (1996). A statute will only be declared unconstitutional if it clearly, palpably and plainly violates the constitution. *Commonwealth v. Mikulan*, 504 Pa. 244, 470 A.2d 1339 (1983).

██ The federal constitutional provisions at issue are the Eighth Amendment prohibition against cruel and unusual punishment, and the Fourteenth Amendment guarantees of due process and equal protection. The provisions of the Pennsylvania Constitution cited by appellee are in Article 1; beginning with Section 1, guaranteeing equal protection; Section 9, providing, in relevant part, for due process in criminal proceedings; Section 13, prohibiting the infliction of cruel punishment; Section 26, precluding governmental discrimination against any person; and Section 28, prohibiting discrimination based on gender.[5] In *Commonwealth v. Edmunds*, 526

4. As of this writing, appellee is in custody awaiting sentence on his convictions for murder in the first degree, two counts of robbery, two counts of possessing instruments of crime, two counts of criminal conspiracy and three counts of aggravated assault.

5. Although appellee cites to each of the sections set forth above, in actuality his argument for precluding victim impact testimony under the Pennsylvania Constitution focuses on Article 1, Section 13, and the concepts of due process and equal protection that are subsumed in the overall process of a death penalty proceeding. As appellee fails to

Pa. 374, 586 A.2d 887 (1991), we recognized that certain provisions of the Pennsylvania Constitution, although paralleling those within the United States Constitution, may afford greater protection to the citizens of this Commonwealth. Thus, in considering the merits of this appeal, we will address the dual constitutional provisions, and where appropriate discuss the facets of Pennsylvania jurisprudence, which may compel distinct conclusions under the state charter as opposed to the federal constitution. As we stated in *Edmunds*, when considering a claim that specifically implicates a distinct provision of the Pennsylvania Constitution, we will consider the textual distinctions between the state and federal provisions, the historical interpretation of the provision as elucidated in legislation and case law, related decisions of our sister states, and policy considerations unique to this Commonwealth. *See Id.* at 895. With these principles in place we begin our discussion of the constitutionality of the legislation at issue. The specific statutory provisions are as follows:

**§ 9711. Sentencing procedure for murder of the first degree**

 **(a) Procedure in jury trials.—**

* * *

 (2) In the sentencing hearing, evidence concerning the victim and the impact that the death of the victim has had on the family or the victim is admissible. Additionally, evidence may be presented as to any matter that the court deems relevant and admissible on the question of the sentence to be imposed. Evidence shall include matters relating to any of the aggravating or mitigating circumstances specified in subsections (d) and (e), and information concerning the victim and the impact that the death of the victim has had on the family of the victim. Evidence of aggravating circumstances shall be limited to those circumstances specified in subsection (d).

make distinct arguments on each of the sections of the Pennsylvania Constitution cited above, we will not address those distinct provisions.

* * *

**(c) Instructions to jury.—**

(2) The court shall instruct the jury that if it finds at least one aggravating circumstance and at least one mitigating circumstance, it shall consider, in weighing the aggravating and mitigating circumstances, any evidence presented about the victim and about the impact of the murder on the victim's family. The court shall also instruct the jury on any other matter that may be just and proper under the circumstances.

42 Pa.C.S. § 9711(a)(2),(c)(2), as amended, 1995, October 11, P.L. 1064, No. 22 (Special Session No. 1), § 1.

Appellant argues that the trial court erred in relying upon *Furman* to invalidate the statutory subsections at issue. *Furman* requires that the jury be guided by specific factors in the deliberative process in order to eliminate the risk that a sentence of death would be imposed based on wholly arbitrary or capricious grounds. *Gregg v. Georgia*, 428 U.S. 153, 188, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (summarizing the central mandate of the plurality opinions in *Furman*). Appellant argues that the provisions delineated above do not violate *Furman*, as a jury cannot impose a sentence of death solely on the basis of victim impact testimony. The requirement that a jury's discretion be channeled in the penalty phase relates to the initial determination by the jury that an aggravating circumstance is present which would subject this particular defendant to the penalty of death. *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937, 949–51 (1983). Only after that initial decision has been reached on the existence of at least one aggravating circumstance, and if any of the jurors have found at least one mitigating circumstance can the jury consider victim impact testimony within the weighing process. Thus, appellant argues that the statute as written does not allow victim impact testimony to be used by the jury as a super aggravating circumstance. Appellant further asserts that there is no constitutional requirement that the jury be specifically instructed on how to weigh aggravating and mitigating circumstances with all other relevant information at

issue before reaching its decision. *Zant v. Stephens,* 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). Therefore, appellant concludes that the absence of specific instructions on how to weigh victim impact testimony is an insufficient basis upon which to invalidate the statute.

Appellee argues that the statutory subsections at issue violate both the U.S. and Pennsylvania constitutions. The crux of appellee's argument is that victim impact testimony interjects highly emotional information into the sentencing scheme that is not categorized for the jury as either an aggravating or mitigating circumstance. *Commonwealth v. Peterkin,* 511 Pa. 299, 513 A.2d 373 (1986), *cert. denied,* 479 U.S. 1070, 107 S.Ct. 962, 93 L.Ed.2d 1010 (1987). Therefore, by allowing this testimony into the sentencing framework, without clearly defining its function in the weighing process, the jury is exposed to emotionally charged information which destroys the carefully balanced structure of our capital sentencing scheme. *Blystone v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990). By admitting this type of testimony the jury is susceptible to reaching a decision on penalty swayed by emotion rather than reason. Appellee concludes that such a result would constitute the imposition of cruel punishment contravening the prohibition found in the Eighth Amendment and Article 1, Section 13.

Initially, we note that the constitutional claims raised herein are not neatly separated into convenient categories for analysis. The basic question concerns the Eighth Amendment and Article 1, Section 13, insofar as these provisions broadly prohibit the imposition of cruel and unusual punishment. However, the discrete inquiry at bar infuses elements of due process and equal protection into that broader question. The constitutional challenge to the legislation at issue addresses the deliberative process by which a sentence of death is imposed in a case where the jury receives victim impact testimony. Thus, the question posed is whether the introduction of this evidence results in cruel and unusual punishment because the process by which the sentence is decided has been rendered fundamentally unfair, and has subjected similarly

situated defendants to unequal treatment. Because of the nature of the question posed, our discussion must weave the concepts of due process and equal protection throughout, although the primary focus is on the Eighth Amendment and Article 1, Section 13. As the federal constitution establishes the minimum guarantees of liberty, below which the states cannot fall, we begin with an examination of federal law.

This precise mixture of Fourteenth Amendment concerns creating an Eighth Amendment violation fueled a trilogy of cases in the United States Supreme Court pertinent to our current inquiry. Jurisprudence in that court regarding the introduction of victim impact testimony in a capital sentencing proceeding changed dramatically in a very short period of time. With a vote of five to four, the U.S. Supreme Court initially declared the introduction of a victim impact statement in the sentencing phase of a capital case violative of the Eighth Amendment in *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). By the same slim margin, in *South Carolina v. Gathers*, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989), the court held that a prosecutor's comments about the personal characteristics of the victim made in closing argument to the jury at the sentencing phase of a capital case violated the rule of *Booth.*

The rationale motivating the decisions in *Booth* and *Gathers* was that victim impact testimony introduced inflammatory impassioned information capable of prejudicing the jury. *Booth,* 482 U.S. at 508, 107 S.Ct. 2529; *Gathers,* 490 U.S. at 811, 109 S.Ct. 2207. The court opined that the purpose of capital sentencing was to weigh the moral culpability of the individual defendant, thus the jury's focus should be limited to considerations of the defendant's character and the circumstances of the crime. *Booth,* 482 U.S. at 502, 107 S.Ct. 2529; *Gathers,* 490 U.S. at 810, 109 S.Ct. 2207. Victim impact testimony was declared inadmissible as it allowed the jury to be swayed by considerations of the value of the life taken, thus creating the possibility that defendants would suffer disparate sentences based upon the character of the victim rather than the moral culpability of the defendant. *Booth,* 482 U.S. at 506,

107 S.Ct. 2529; *Gathers,* 490 U.S. at 811, 109 S.Ct. 2207. The stated intent of the court in *Booth* and *Gathers* was to keep the jury free from passion and prejudice in the deliberative process. *Booth,* 482 U.S. at 508, 107 S.Ct. 2529; *Gathers,* 490 U.S. at 812, 109 S.Ct. 2207.

Two years later, with six Justices joining in the decision, the holding established in *Booth,* and reaffirmed in *Gathers,* was overruled. In *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the United State Supreme Court declared that the Eighth Amendment did not erect a per se bar to the admission of victim impact evidence in the penalty phase of a capital case. The majority found nothing in the language of the Eighth Amendment, or the jurisprudence flowing therefrom, barring introduction of relevant evidence concerning the impact of the victim's death on his family in a capital sentencing proceeding. *Id.* at 822, 111 S.Ct. 2597.

The *Payne* court stressed the relevance of victim impact testimony in capital sentencing as such information conveys to the jury that the decedent was a unique individual whose loss affects society. *Id.* at 825, 111 S.Ct. 2597. Victim impact testimony was also found relevant in weighing the moral culpability of the defendant, as the loss of the victim to his family was a foreseeable consequence of the defendant's action. *Id. Payne* rejected the equal protection analysis put forth in *Booth,* that victim impact testimony permits a jury to consider the greater value of one victim's life over that of another victim. *Id.* at 808, 111 S.Ct. 2597 (citing *Booth,* 482 U.S. at 506, n. 8, 107 S.Ct. 2529). The *Payne* court found this reasoning unsupported in practice, because juries are not provided with comparisons among victims; in any given trial, the jury is provided a glimpse of only that particular individual victim's life. *Payne,* 501 U.S. at 823–824, 111 S.Ct. 2597. Additionally, the court rejected the equal protection argument focused on the possible disparate treatment of defendants because of the identity and character of the victim, facts that the defendant may not have known at the time of the murder. This argument was rejected for the simple reason that by the act of murder, it was reasonably foreseeable that the defen-

dant took from society the value of a unique life in being. The foreseeability of the consequences of the act of killing must have relevance to the determination of sentence. *Id.* at 838, 111 S.Ct. 2597 (Souter, J., concurring). As for the concern that such testimony would inflame the passions of the jury, the court stated that relief is always available to correct those situations where unduly prejudicial information is introduced which renders the sentencing process fundamentally unfair. *Id.* at 831, 111 S.Ct. 2597 (O'Connor, J., concurring). The *Payne* court held that victim impact testimony is properly considered in reaching a conclusion as to each individual defendant's moral culpability, as it relates the defendant's actions directly to the victim of that particular crime. *Id.* at 827, 111 S.Ct. 2597.

The *Payne* court addressed the specific interwoven constitutional claims raised in this case and found no due process or equal protection concerns that infected the sentencing process in such a manner as to create an Eighth Amendment violation. Given the careful and thorough consideration of the role of victim impact testimony in capital cases through the opinions in *Booth, Gathers,* and *Payne,* the ultimate conclusion of the U.S. Supreme Court on this issue is not consistent with the trial court's finding of a federal constitutional violation. Although *Payne* did not address the need for specific instructions to the jury on victim impact testimony, the opinion presupposes that by application of the general rules regarding admissibility and relevancy, fundamental fairness can be maintained. *Id.* 501 U.S. at 825, 831, 111 S.Ct. 2597. Thus, contrary to the decision of the trial court, we do not find the statutory subsections at issue violative of the federal constitution. However, this does not end our analysis, we must now turn our attention to appellee's argument, and the trial court's conclusions, under the Pennsylvania Constitution.

Following our *Edmunds* criteria, we begin by examining the language of the coordinate federal and state constitutional provisions. The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." Article 1, Section 13

states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." A comparison of the text does not advance a basis for distinct treatment under either document.

Appellee recognizes that in *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937, 967–69 (1982), after a thorough historical review, this court rejected the argument that Article 1, Section 13 provided greater protection against the imposition of a sentence of death than the Eighth Amendment. Appellee distinguishes *Zettlemoyer*, arguing that the question in that case focused on whether death is per se cruel punishment. In this case, appellee asserts, it is not the penalty itself, but rather the decision making process by which the jury chooses to impose the penalty that is at issue. Appellee is correct; *Zettlemoyer* is distinguishable on that basis; however, we must decide if that distinction is sufficient to advance appellee's conclusion that Article 1, Section 13 prohibits admission of victim impact testimony.

Given the nature of our query, consideration of the capital sentencing scheme under the Pennsylvania statute is an appropriate starting point for our review. Following the landmark decision in *Furman*, the Pennsylvania legislature enacted the current statute. 42 Pa.C.S. § 9711, *originally enacted*, March 26, 1974, P.L. 213, No. 46, § 3, imd. effective. Post *Furman*, in order to pass constitutional muster, capital sentencing statutes were required to narrow significantly the type of cases subject to the penalty. This narrowing process is referred to as the eligibility stage. *Zant*, 462 U.S. at 877, 103 S.Ct. 2733. The Pennsylvania statute meets this requirement by limiting the cases eligible for a sentence of death by application of specific aggravating circumstances. *See* 42 Pa. C.S. § 9711(d). The next phase of capital sentencing is the selection stage. *Zant*, 462 U.S. at 878–879, 103 S.Ct. 2733. This is the individualized aspect of the sentencing process where the jury is focused on the character of the defendant and the circumstances of the crime in order to determine if this defendant, having now been deemed eligible, should actually be selected for a sentence of death. The mitigating

circumstances listed at 42 Pa.C.S. § 9711(e) are relevant to this determination. By narrowing the class of cases eligible for the penalty of death, and channeling the focus at sentencing to the culpability of the individual defendant in relation to the circumstances of the crime, the Pennsylvania statute meets the necessary constitutional requirements. *Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990). Due process is satisfied as the manner of determining eligibility is fair, and equal protection is maintained as similarly situated defendants are subject to the same eligibility criteria. This sentencing scheme channels the jury's focus on the nature of the criminal conduct and the particular characteristics and moral culpability of the defendant, thus promoting rationality within the deliberative process and providing a record sufficient for meaningful appellate review. *Zettlemoyer*, 454 A.2d at 959–61. The question before us is whether the addition of victim impact testimony to this sentencing format disturbs the constitutional balance.

Appellee argues that only aggravating and mitigating circumstances are appropriate considerations in the deliberative process. Victim impact testimony is not defined by the legislature as an aggravating circumstance, nor is it tied to a mitigating circumstance as relevant rebuttal to the character evidence offered by the defendant; therefore, it must be precluded from consideration as it will cause the constitutional balance of the sentencing scheme to be disrupted. Appellant counters this position by defining victim impact testimony as a consideration relevant to the selection stage of the sentencing scheme. It is not an aggravating factor, but only a foreseeable consequence of the criminal act in taking a life. As it is not an aggravating factor, there is no need to establish a burden of proof or to delineate additional instructions to the jury on how to weigh the information. To decide which of these competing positions is correct first requires a determination of whether the Pennsylvania capital sentencing scheme limits the introduction of evidence in the penalty hearing to only that information necessary to establish the aggravating and mitigating circumstances at issue. Two Pennsylvania

decisions touch on the limitations of admissible relevant evidence in a penalty hearing, *Commonwealth v. Abu–Jamal,* 521 Pa. 188, 555 A.2d 846 (1989), and *Commonwealth v. Fisher,* 545 Pa. 233, 681 A.2d 130 (1996).

In *Abu–Jamal,* the court rejected appellant's argument that only evidence relevant to the specific aggravating and mitigating circumstances at issue can be presented to the jury during the penalty phase of the trial. The court looked to the language of 42 Pa.C.S. § 9711(a)(2) as it appeared at that time, prior to the amendments currently at issue, and declared:

> We do not read the statute as limiting the scope of the sentencing hearing to this extent. The legislature has directed that "[I]n the sentencing hearing, evidence may be presented *as to any matter that the court deems relevant* and admissible on the question of the sentence to be imposed *and shall include matters relating to any of the aggravating or mitigating circumstances* specified in subsections (d) and (e)." 42 Pa.C.S. § 9711(a)(2) (emphasis added). If matters relating to the aggravating and mitigating circumstances were the only matters capable of being explored, the first phrase emphasized above would be surplusage, indeed misleading surplusage. Such a reading would, of course, be contrary to the most basic rules of statutory construction.

555 A.2d at 858. The holding in *Abu–Jamal* strongly contradicts appellee's contention that only evidence pertaining to aggravating and mitigating circumstances can be received by the jury during a penalty phase proceeding.

Following the decision in *Abu–Jamal,* the legislature amended subsection 42 Pa.C.S. § 9711(a)(2) to specifically include victim impact testimony as admissible, along with other relevant evidence, during the penalty phase of a capital case. The timing of the legislative action indicates support for the analysis of the court in *Abu–Jamal.* Rather than amending the statute to reject the expansive interpretation of the language of subsection (a)(2), employed by the court in *Abu–*

*Jamal,* the legislature built upon that interpretation by specifically including victim impact testimony within the parameters of relevant evidence admissible in the penalty phase of a capital case. When the legislature fails to reject a court's interpretation of statutory language it is presumed that the court's interpretation is consistent with legislative intent. *Fonner v. Shandon, Inc.,* 555 Pa. 370, 724 A.2d 903 (1999); 1 Pa.C.S. § 1922(4). Thus, we find the legislature intended to endorse the view that in a penalty phase hearing, relevant evidence is not limited to the enumerated aggravating and mitigating circumstances listed in 42 Pa.C.S. § 9711(d) and (e).

The second case relevant to our inquiry is *Fisher,* a case that was tried prior to the effective date of the amendments at issue. The majority opinion in *Fisher* did not acknowledge the clear legislative intent of the intervening amendment, nor did it mention the holding in *Abu–Jamal. Fisher* generated three separate opinions; four Justices joined the majority, two Justices dissented, and this author filed a concurring opinion that joined the majority opinion only in result. The *Fisher* majority recognized that *Payne* permitted states to draft death penalty statutes allowing for the admission of victim impact testimony. The Pennsylvania statute in effect at the time of Fisher's trial did not include such a provision. *Fisher,* 681 A.2d at 146. The majority construed the statute to limit the admission of "relevant" evidence in a penalty hearing to only the evidence that supports or counters an aggravating or mitigating circumstance presented in the case. *Id.* at 146.

The dissent argued first, that the testimony at issue was not victim impact testimony. The dissent asserted that the testimony in question was presented to support the aggravating circumstance at issue, 42 Pa.C.S. § 9711(d)(15), whether the victim was murdered in retaliation for information she provided to the police. *Id.* at 152. Second, the dissent opined that victim impact testimony should always be admissible in the penalty phase of a capital case, as it is relevant to the imposition of sentence.

The concurring opinion joined in the result reached by the majority only because the instructions given to the jury in

326

*Fisher* as to the role victim impact testimony should play within the deliberative process were inadequate. *Id.* at 151. Otherwise, the concurring opinion strongly endorsed the admission of victim impact testimony in all capital cases and rejected the limitations relied upon by the majority in precluding such testimony under the existing statutory language. *Id.* at 149. The concurring opinion relied heavily upon the court's earlier decision in *Abu–Jamal.*

Reviewing the language of the sentencing provisions before and after the current amendment and the relevant case law interpreting those provisions, we can discern no historical support for invalidating the statutory subsections at issue. With the exception of *Fisher,* a case of limited application, Pennsylvania jurisprudence favors the introduction of all relevant evidence during a capital sentencing proceeding. Pennsylvania's sentencing scheme does not limit the evidence admissible in the penalty phase to only the information necessary to establish aggravating and mitigating circumstances.

Appellee also challenges victim impact testimony because the jury is not instructed on how to conduct the weighing of this factor in the deliberative process. Appellee asserts that without proper instruction on the use of this information, appellate courts will be left without a means to conduct appropriate appellate review of the deliberations leading to imposition of the sentence of death. In *Zettlemoyer,* this court responded to a constitutional challenge to the current capital sentencing scheme on a very similar point. 454 A.2d at 963–64. Zettlemoyer argued that the sentencing scheme was unconstitutional because the jury was not instructed as to what extent the aggravating circumstances must outweigh the mitigating circumstances. Without a fixed burden, appellant argued that the sentence would be arbitrary and capricious and impervious to meaningful appellate review. The court rejected this argument, finding it sufficient that the jury was instructed that aggravating circumstances must be proven beyond a reasonable doubt and mitigating circumstances by a preponderance of the evidence. The actual weighing of the various factors before reaching a consensus on sentence,

though difficult, required no further instructions as the jury's discretion was sufficiently channeled and focused on the circumstances of the homicide and the character of the defendant. *See, Proffitt v. Florida,* 428 U.S. 242, 258, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

The absence of directions on what weight should attach to victim impact testimony does not affect the constitutional balance as there is no constitutional requirement that the jury be advised on this point. Further, as demonstrated by the above discussion, victim impact testimony is just one of the relevant factors the jury may consider when weighing the aggravating and mitigating circumstances it has found during its deliberations on sentence. The addition of victim impact testimony into the deliberative process is not such an arbitrary factor that its inclusion would preclude meaningful appellate review. We are satisfied that the trial judges of this Commonwealth can adequately prevent unduly prejudicial and inflammatory information from entering into the jury's deliberations in the guise of victim impact testimony. Our review of prior decisions and the pertinent legislative enactments presents no historical bar to the admission of victim impact testimony during the penalty phase of a capital case.

In reviewing this issue, we are aware that many of our sister states have also debated the question of victim impact testimony. The majority of jurisdictions addressing this issue since *Payne* have concluded that victim impact evidence is relevant and admissible in capital sentencing. Of the thirty-seven jurisdictions providing for capital punishment, thirty-one permit the introduction of victim impact testimony. Two states prohibit the consideration of victim impact testimony. As of this writing, four states, (Connecticut, Montana, New Hampshire and New York) have yet to address the question. As we stated in *Edmunds,* it is not the numerical weight that is persuasive; rather, it is the reasoning employed which drives us to consider the disposition of a particular issue by our sister states. *Edmunds,* 586 A.2d at 900.

In the two jurisdictions prohibiting victim impact testimony, there are distinct reasons for doing so. Indiana prohibits

victim impact testimony as it strictly interprets its penalty statute to limit relevant evidence to the statutorily specified aggravating and mitigating circumstances. *Bivins v. State*, 642 N.E.2d 928, 957 (Ind.1994). Mississippi does not have a per se ban on victim impact evidence. Rather, it limits such testimony to those situations where it is necessary to the development of the case, or to establishing a relevant aggravating circumstance. *Berry v. State*, 703 So.2d 269, 275 (Miss. 1997).[6]

Among the jurisdictions that permit victim impact evidence, New Jersey stands alone as the only state that permits the admission of victim impact testimony only in those cases in which the defendant places his character or record at issue as a mitigating circumstance. N.J. Stat. Ann. § 2C:11-3c(6). In examining this particular statute, the New Jersey Supreme Court found the legislation satisfied federal and state constitutional requirements. *State v. Muhammad*, 145 N.J. 23, 678 A.2d 164, 168 (1996).

Under the New Jersey sentencing scheme, if the jury finds at least one aggravating circumstance, and if the jury also finds evidence of the defendant's character and/or record under the catch-all mitigating circumstance, the jury shall consider victim impact testimony in deciding how much weight to attribute to that mitigating circumstance. *Id.*, at 170. The court found that this manner of admitting victim impact testimony into the capital sentencing process was appropriate

6. Two other jurisdictions prohibited victim impact testimony until their respective state legislatures amended the death penalty statutes therein to specifically include victim impact testimony. Initially, the Oregon Supreme Court rejected victim impact testimony under a strict interpretation of the relevant state statute in *State v. Guzek*, 322 Or. 245, 906 P.2d 272 (1995). The statute was amended at Or.Rev.Stat. § 163.150(1)(a), and victim impact testimony was subsequently found admissible by the court in *State v. Hayward*, 327 Or. 397, 963 P.2d 667 (1998). Opining that society should not condemn murderers according to the value of the life taken, the Utah Supreme Court banned victim impact testimony in *State v. Carter*, 888 P.2d 629, 652–53 (Utah 1995) *cert. denied*, 516 U.S. 858, 116 S.Ct. 163, 133 L.Ed.2d 105 (1995). The Utah death penalty statute was subsequently amended to permit victim impact testimony, with the limitation that it is presented without comparison to other persons or victims. Utah Code Ann.1953 § 76–3–207(2)(a)(iii) (1999).

as it tied the evidence directly to the moral blameworthiness of the defendant. *Id.,* at 173. Using an analytical framework similar to the one this court developed in *Edmunds,* the New Jersey Supreme Court dismissed the state constitutional challenges to the statute, finding no cruel and unusual punishment violation resulting from due process or equal protection concerns. *Muhammad,* 678 A.2d at 173–79.[7]

The remaining states that permit victim impact testimony allow it under generalized considerations of relevancy regarding the circumstances of the crime, proof of the uniqueness of the victim as an individual life in being and the moral culpability of the defendant. *Slaton v. State,* 680 So.2d 909 (Ala.1996), *cert. denied,* 519 U.S. 1079, 117 S.Ct. 742, 136 L.Ed.2d 680 (1997); *State v. Gonzales,* 181 Ariz. 502, 892 P.2d 838 (1995), *cert. denied,* 516 U.S. 1052, 116 S.Ct. 720, 133 L.Ed.2d 673 (1996); *Nooner v. State,* 322 Ark. 87, 907 S.W.2d 677 (1995), *cert. denied,* 517 U.S. 1143, 116 S.Ct. 1436, 134 L.Ed.2d 558 (1996); *People v. Edwards,* 54 Cal.3d 787, 1 Cal.Rptr.2d 696, 819 P.2d 436 (1991), *cert. denied, Edwards v. California,* 506 U.S. 841, 113 S.Ct. 125, 121 L.Ed.2d 80 (1992); *People v. Dunlap,* 975 P.2d 723 (Colo.1999), *cert. denied,* 528 U.S. 893,

---

7. Beyond its constitutional conclusion, however, the New Jersey court went on to establish procedural safeguards to ensure that the evidence was admitted for its lawful purpose and limited to its appropriate place in the proceedings. Those safeguards can be summarized as follows: 1) the state must notify a defendant, prior to trial, of its intent to introduce victim impact testimony if the defendant asserts the triggering mitigating factor; 2) the state must provide the defendant with the names of the potential victim impact witnesses; 3) absent special circumstances, only one witness should testify on behalf of the victim's family; 4) minors should not be permitted to present victim impact testimony; 5) the trial court should hear the proffered testimony outside the presence of the jury to make a preliminary determination as to admissibility; 6) the statement should be reduced to writing for the trial judge to review and thereby reduce the potential for prejudicial content; 7) the statement should be limited to factual information on the victim's family, employment, education and interests, as far as possible it should be free of emotion and devoid of inflammatory comments. *Id.* at 180. While recognizing that these guidelines are appropriate given the structure of the New Jersey statute, we repeat them here as an example of how one of our sister states treats victim impact testimony; we do not endorse these procedures for adoption within our courts.

120 S.Ct. 221, 145 L.Ed.2d 186 (1999); *In Re Petition of the State of Delaware*, 597 A.2d 1 (Del.1991); *Windom v. State*, 656 So.2d 432 (Fla.1995), *cert. denied, Windom v. Florida*, 516 U.S. 1012, 116 S.Ct. 571, 133 L.Ed.2d 495 (1995); *Livingston v. State*, 264 Ga. 402, 444 S.E.2d 748 (1994); *State v. Card*, 121 Idaho 425, 825 P.2d 1081 (1991), *cert. denied, Card v. Idaho*, 506 U.S. 915, 113 S.Ct. 321, 121 L.Ed.2d 241 (1992); *People v. Hope*, 147 Ill.2d 315, 168 Ill.Dec. 103, 589 N.E.2d 503 (1992); *State v. Gideon*, 257 Kan. 591, 894 P.2d 850 (1995); *Bowling v. Commonwealth*, 942 S.W.2d 293 (Ky.1997), *cert. denied*, 522 U.S. 986, 118 S.Ct. 451, 139 L.Ed.2d 387 (1997); *State v. Scales*, 655 So.2d 1326 (La.1995), *cert. denied*, 516 U.S. 1050, 116 S.Ct. 716, 133 L.Ed.2d 670 (1996); *Evans v. State*, 333 Md. 660, 637 A.2d 117 (1994); *State v. Parker*, 886 S.W.2d 908 (Mo.1994), *cert. denied*, 514 U.S. 1098, 115 S.Ct. 1827, 131 L.Ed.2d 748 (1995); *State v. Bjorklund*, 258 Neb. 432, 604 N.W.2d 169 (2000); *McNelton v. State*, 111 Nev. 900, 900 P.2d 934 (1995), *cert. denied*, 517 U.S. 1212, 116 S.Ct. 1833, 134 L.Ed.2d 937 (1996); *State v. Clark*, 128 N.M. 119, 990 P.2d 793 (1999); *State v. Guevara*, 349 N.C. 243, 506 S.E.2d 711 (1998), *cert. denied*, 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1013 (1999); *State v. Fautenberry*, 72 Ohio St.3d 435, 650 N.E.2d 878 (1995), *cert. denied*, 516 U.S. 996, 116 S.Ct. 534, 133 L.Ed.2d 439 (1995); *Cargle v. State*, 1995 OK CR 77, 909 P.2d 806 (1996), *cert. denied*, 519 U.S. 831, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996); *Lucas v. Evatt*, 308 S.C. 31, 416 S.E.2d 646 (1992); *State v. Rhines*, 548 N.W.2d 415 (S.D.1996), *cert. denied*, 519 U.S. 1013, 117 S.Ct. 522, 136 L.Ed.2d 410 (1996); *State v. Nesbit*, 978 S.W.2d 872 (Tenn.1998); *Banda v. State*, 890 S.W.2d 42 (Tex.Crim.App.1994), *cert. denied*, 515 U.S. 1105, 115 S.Ct. 2253, 132 L.Ed.2d 260 (1995); *Weeks v. Commonwealth*, 248 Va. 460, 450 S.E.2d 379 (1994), *cert. denied*, 516 U.S. 829, 116 S.Ct. 100, 133 L.Ed.2d 55 (1995); *State v. Gentry*, 125 Wash.2d 570, 888 P.2d 1105 (1995); *Barnes v. State*, 858 P.2d 522 (Wyo.1993).

Our examination of the above listed decisions of our sister states reveals that the jurisdictions that permit victim impact testimony consider it admissible as a foreseeable consequence

of the defendant's action in taking a life. The cases cited also find victim impact testimony relevant as a factor in determining the moral culpability of the defendant and in focusing the jury's attention on the unique circumstances of the particular case before it. We note that many of our sister states have set forth procedural safeguards similar to those adopted by the New Jersey Supreme Court, and that additionally, several courts have suggested specific jury instructions regarding the purpose of victim impact testimony. *See, e.g., Turner v. State,* 268 Ga. 213, 486 S.E.2d 839, 842 (1997); *State v. Nesbit,* 978 S.W.2d 872, 890 (Tenn.1998); *Cargle v. State,* 1995 OK CR 77, 909 P.2d 806, 828–29 (1999). The jurisdictions that have considered the issue of victim impact testimony have overwhelmingly chosen to admit the testimony as relevant in capital sentencing. The decisions of our sister states are persuasive support for rejecting the current constitutional challenges to the statutory provisions at issue.

We next turn to specific policy concerns of this Commonwealth that would influence a decision on the constitutional validity of the statutory subsections at hand. Policy is distilled through, among other things, observation of common practices, customs and legislation reflecting the will of the people. An example of common practice can be found in the courtrooms of this Commonwealth, where on a daily basis sentencing decisions are made after due consideration of the impact the defendant's actions had on the physical, emotional and financial well-being of the victim. As a matter of custom, reflected in the rules of this court, pre-sentence reports containing victim impact statements are prepared in all noncapital cases. Pa.R.Crim.P. 1403A(4). This practice is of longstanding and reveals no basis to except those cases in which the victim has suffered a fatal injury at the hands of the defendant. Appellee argues that a distinction should be made on the basis that a jurist imposes sentence in a non-capital case while a jury normally serves that function in a capital case. This argument presumes that judges are trained to remain objective, while the average juror is susceptible to passion and bias after hearing emotional testimony from the

victim's family. This argument is of little merit. A pillar upon which our system of trial by jury is based is that juries are presumed to follow the instructions of the court. *Commonwealth v. Baker*, 531 Pa. 541, 614 A.2d 663, 672 (1992). Trial judges are uniformly capable of restricting the admission of relevant evidence to only that information which is essential to the issue at hand, devoid of inflammatory, unessential data. *Commonwealth v. Holland*, 518 Pa. 405, 543 A.2d 1068, 1071 (1988). We believe the traditional practices of this Commonwealth regarding inclusion of victim impact testimony in non-capital cases support admission of such information in capital cases, under the control of the trial judge.

In addition to the legislative enactment currently under consideration, legislation championing the rights of crime victims has been in effect in Pennsylvania for over 70 years. 71 P.S. § 180–9 *et seq.*, 1929, April 9, P.L. 177, No. 175; replaced by, 18 P.S. § 11.101 *et seq.*, 1998, Nov. 24, P.L. 882, No. 111, imd. effective. Crime victims are to be treated with dignity, respect, courtesy and sensitivity, and their rights are to be vigorously protected and defended. Crime victims have a basic bill of rights guaranteeing their input in sentencing matters, their right to restitution, and information on the potential release from custody of their assailants. *Id.* Such aggressive intent to protect the rights of crime victims and involve them in the sentencing process favors the inclusion of victim impact testimony in capital cases.

Pursuant to our *Edmunds* mandate, we have considered the text of the constitutional provisions at issue, the historical perspective regarding victim impact testimony in capital cases, the decisions of our sister states and the pertinent policy concerns relevant to our Commonwealth. In sum, we find no support for the trial court's conclusion that the legislation at issue violates Article 1, Section 13 of the Pennsylvania Constitution, or any of the other sections of that Article cited by appellee.[8]

8. Appellee makes two additional arguments as alternative grounds to support the decision of the lower court. Each of these issues was raised below; however, the trial court addressed neither. Appellant

Although, we are firmly convinced that the statutory subsections allowing for the introduction of victim impact evidence do not violate the federal or state constitutions, we recognize that the trial court in addressing this issue raised legitimate procedural concerns regarding victim impact testimony. However, we believe those concerns are best addressed through the natural development of our case law. Death penalty cases are sui generis, from start to finish they are fraught with passion. Yet, we have always assumed our trial judges more than capable of overseeing the presentation of evidence so that overtly passionate, intentionally biased, and inflammatory material is kept out of the courtroom.

 Of course, it must be recognized that victim impact testimony will only be admitted where the Commonwealth establishes that the victim's death did in fact have an impact on the victim's family. Generalizations of the effect of the

charges that the claims are waived. Although we do not find either issue of merit, we do not find them waived. The issues were raised below, and preserved by appellee in his brief to this court as alternate theories regarding the constitutionality of the statutory subsections at issue.

The amendments addressing victim impact testimony were enacted by the legislature in a special session that had been called by the Governor on January 18, 1995 to address, among other things, an orderly process for the implementation of the death penalty. Appellee charges that in addressing victim impact testimony, the legislature went beyond the scope of the Governor's proclamation, and therefore, the amendments are invalid. A proclamation calling for a special session to address legislation on a particular subject need only be specific enough to evoke intelligent and responsive action on that subject; it need not set forth a particularized methodology to accomplish the intended purpose. See, Annenberg v. Roberts, 333 Pa. 203, 2 A.2d 612, 616 (1938). We do not find merit to appellee's argument that including victim impact testimony in the penalty phase deliberations caused the legislature to act on a subject beyond the scope of the governor's expressed purpose in calling the special session.

Finally, appellee argues that the legislation is unconstitutional as it infringes upon the rulemaking authority of this court, as expressly provided in Article V, Section 10 of the Pennsylvania Constitution. The legislation allows victim impact testimony to be admitted. The courts regulate admissibility of evidence to only that information relevant and material to the deliberations of the jury. The current legislation falls within the purview of the General Assembly and does not hinder the function or authority of the court. Commonwealth v. DeHart, 512 Pa. 235, 516 A.2d 656, 670–71 (1986). This argument is also without merit.

victim's death on the community at large, or information concerning the particular characteristics of the victim presented in a vacuum will not fall within the ambit of the statutory provision. Once this threshold for admissibility has been met, the exact method victim impact testimony is presented is left to the discretion of the trial court.

Moving to the concern raised by the lower court regarding jury instructions we note that it has always been the policy of this court to give our trial judges latitude in phrasing instructions. However, recognizing the complexity of victim impact testimony within the volatile atmosphere of the penalty phase in a death case we offer the following language as a prototype jury instruction. While the following charge is not mandated we believe it furthers the intended goal of admitting relevant victim impact testimony, while eliminating the potential for impassioned emotional appeals to the jury.

> The prosecution has introduced what is known as victim impact evidence. Victim impact evidence is not evidence of a statutory aggravating circumstance and it cannot be a reason by itself to impose the death penalty. The introduction of victim impact evidence does not in any way relieve the Commonwealth of its burden to prove beyond a reasonable doubt at least one aggravating circumstance. You may consider this victim impact evidence in determining the appropriateness of the death penalty only if you first find that the existence of one or more aggravating circumstances has been proven beyond a reasonable doubt independent from the victim impact evidence, and if one or more jurors has found that one or more mitigating circumstances have been established by a preponderance of the evidence. Victim impact evidence is simply another method of informing you about the nature and circumstances of the crime in question. You may consider this evidence in determining an appropriate punishment. However, the law does not deem the life of one victim more valuable than another; rather, victim impact evidence shows that the victim, like the defendant, is a unique individual. Your consideration must be limited to a rational inquiry into the culpability of

the defendant, not an emotional response to the evidence. The sentence you impose must be in accordance with the law as 1 instruct you and not based on sympathy, prejudice, emotion or public opinion and not based solely on victim impact.

Accordingly, the decision of the trial court is reversed and this case is remanded for further proceedings consistent with this opinion.[9] Jurisdiction relinquished.

Justice SAYLOR files a concurring opinion.

Justice ZAPPALA files a dissenting opinion joined by Chief Justice FLAHERTY.

Justice NIGRO files a dissenting opinion.

SAYLOR, Justice, concurring.

1 agree with the majority's conclusion that Pennsylvania's statutory scheme governing sentencing determinations in capital cases, as presently amended to allow for the admission of victim impact evidence, does not violate constitutional precepts. This is so, because the General Assembly has now expressly allowed for the consideration of victim impact as a

9. Our learned colleague in the dissent argues that the Pennsylvania statutory scheme at issue violates the fundamental fairness provision of the Due Process clause of the Fourteenth Amendment of the United States Constitution. Specifically, the dissent finds fault with the legislative scheme as it permits the introduction of victim impact testimony in all death cases. The dissent argues that victim impact testimony should only be admissible in those cases where a defendant has placed his own character at issue by offering mitigating evidence under 42 Pa.C.S. § 9711(e)(8) (a defendant may present "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense".). We respectfully point out that the legislative scheme at issue is consistent with the majority of states that permit victim impact testimony to be admitted. Further, we note that the framework endorsed by the dissent, following upon the New Jersey legislative scheme, forces the defendant to make the Hobson's choice of presenting character evidence in mitigation and then facing victim impact testimony, or foregoing such mitigation evidence in order to block presentation of victim impact testimony. We believe our legislature chose the fairer course. By allowing victim impact testimony in all death penalty cases, the defense can be forearmed in its penalty phase preparation rather than hamstrung in choosing between a rock and a hard place.

form of other aggravating evidence relevant only to "selection" of a defendant for imposition of a sentence of death after the defendant's "eligibility" has been determined according to the statutorily-prescribed aggravating factors set forth at Section 9711(d) of the Judicial Code. *See* 42 Pa.C.S. § 9711(a)(2). *See generally Commonwealth v. Trivigno*, 561 Pa. 232, 257–58, 750 A.2d 243, 256–57 (2000)(Saylor, J., concurring)(describing a capital sentencing body's separate eligibility and selection determinations, the Eighth Amendment constraints attaching to the eligibility facet, and the constitutional validity of consideration of a wider range of circumstances in the selection process).

My difference with the majority, however, arises from its decision to abandon the prevailing interpretation concerning the general operation of the Pennsylvania death penalty statute as was reflected in *Commonwealth v. Fisher*, 545 Pa. 233, 266–68, 681 A.2d 130, 146–47 (1996). *Fisher* held that victim impact evidence and other forms of "selection" aggravating evidence were not admissible under the pre-amendment version of the death penalty enactment, since the statute did not expressly provide for the consideration of such evidence, nor did it allow for the open-ended presentation of evidence of aggravation in either the eligibility or selection processes. *See id.* This rationale was also the basis of my concurring opinion in *Trivigno*, in which I disagreed with the opinion of a plurality of the Court that an open-ended interpretation of Pennsylvania's capital sentencing scheme such as that adopted by the present majority should be applied to permit consideration of a defendant's future dangerousness in the selection determination. *See Trivigno*, 561 Pa. at 258–59, 750 A.2d at 256–57 (Saylor, J., concurring).

I continue to find *Fisher's* interpretation to be amply supported in principles of statutory construction and in the historical background of the death penalty statute as described in that opinion,[1] and I believe that it would be prudent to

1. Unlike the majority, I also do not view *Fisher* as being inconsistent with the Court's prior decision in *Commonwealth v. Abu–Jamal*, 521 Pa. 188, 555 A.2d 846 (1989). As I read *Abu–Jamal*, the Court deemed the

continue to relegate any additional expansion in terms of available "selection" aggravating considerations to future express dictates of the General Assembly, subject to constitutional limitations. Indeed, to the extent that the range of "selection" aggravating considerations is left unconstrained, the risk increases that the capital sentencing body's objective eligibility decision may be clouded by more subjective selection considerations. Notably, such risk has prompted some other jurisdictions to take special precautionary measures, such as bifurcating the eligibility and selection processes. *See, e.g., People v. Dunlap,* 975 P.2d 723, 739 (Colo.), *cert. denied,* 528 U.S. 893, 120 S.Ct. 221, 145 L.Ed.2d 186 (1999).

Since, by virtue of the legislative amendment, victim impact evidence is now an available selection criterion under the statute, I am able to join the majority's disposition. I also join in that portion of the majority opinion advocating careful and substantial control by the trial courts over the manner in which victim impact testimony is presented to sentencing juries in order to avoid the insertion of passion and undue prejudice into the proceedings.

ZAPPALA, Justice, dissenting.

Should a jury be permitted to weigh the value of human life such that the death penalty might be imposed where the victim is an upstanding citizen but not be imposed where the victim lived on the margins of society? Having the jury consider such profound issues without adequate direction from the court disrupts the careful weighing process constitutionally required to be employed by juries in determining whether a sentence of death is warranted. Moreover, it improperly

evidence at issue to have constituted rebuttal by the Commonwealth to the defendant's case of mitigation, *see Abu–Jamal,* 521 Pa. at 214, 555 A.2d at 858, as opposed to independent "selection" aggravating evidence offered by the Commonwealth in support of imposition of the death penalty. Indeed, viewed in such light, *Fisher* itself gives full credit to the reasoning applied in *Abu–Jamal. See Fisher,* 545 Pa. at 268, 681 A.2d at 147 (stating that the death penalty statute under consideration "gave latitude to the Commonwealth to introduce evidence to counter and respond to whatever mitigating evidence was introduced").

channels the jury's deliberation towards examining the life of the victim, rather than the criminal act and character of the defendant.

At a minimum, the introduction of such evidence is incompatible with precedent of our Court providing that "victim impact evidence," unaccompanied by restrictions as to its presentation or guidelines as to its evaluation, unconstitutionally interjects arbitrariness into the capital sentencing scheme. *Commonwealth v. Fisher*, 545 Pa. 233, 681 A.2d 130 (1996). Because the Opinion Announcing the Judgment of the Court has flagrantly disregarded this rule of law and upheld the victim impact provisions of the capital sentencing statute, I vigorously dissent. While the adoption of stringent guidelines regarding the presentation and use of victim impact evidence may minimize the effect of the statute's constitutional infirmities, it is not, and never has been, the role of our Court to amend what the General Assembly has enacted.

Initially, I note that I join that portion of Mr. Justice Nigro's Dissenting Opinion wherein he concludes that 42 Pa.C.S. § 9711(a)(2) and (c)(2) violate the fundamental fairness required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Likewise, I agree with his conclusion that the amended statute "injects the very kind of arbitrary and impermissible factor into the jury's sentencing decision that this Court prohibited in *Fisher*." Dissenting Opinion 565 Pa. at 341, 773 A.2d at 163. Unlike Mr. Justice Nigro, however, I would not admit victim impact evidence as rebuttal to defense evidence introduced as a catchall mitigating circumstance under 42 Pa.C.S. § 9711(e)(8). As noted by the Opinion Announcing the Judgment of the Court, such a construct "forces the defendant to make the Hobson's choice of forgoing such mitigation evidence in order to block presentation of victim impact testimony." Opinion Announcing the Judgment of the Court at 565 Pa. at 312, 773 A.2d 159. The answer to the dilemma, however, is not to admit the evidence without restriction. Rather, victim impact testimony should be precluded.

The evils likely to arise from the admission of victim impact evidence are numerous and of constitutional significance. Because there is no statutory provision describing the standard of proof by which such evidence is to be assessed or whether unanimity is required in how the evidence is to be weighed, victim impact evidence can not be constitutionally considered as a "super" aggravating circumstance. The evidence should also not be considered as an arbitrary "tiebreaker" in the weighing of competing aggravating and mitigating circumstances. Moreover, the Opinion Announcing the Judgment of the Court has failed to even contemplate the possibility of victim impact evidence being offered by the defense.[1] The fact that these scenarios are likely to occur drastically increases the risk of capricious imposition of the death penalty.

As drafted, the statute is constitutionally inadequate to regulate the presentation and consideration of victim impact evidence in the myriad of situations that are likely to arise. When the life of a human being hangs in the balance, the Court should be wary of sanctioning practices that may result in an execution based heavily on the attributes of the victim rather than the culpability of the defendant. Although the guidelines referenced in Mr. Justice Nigro's Dissenting Opinion may work to prevent some constitutional violations from occurring, the adoption of such substantive limitations lies within the prerogative of the legislature. As they tinker and adjust such guidelines, some may die. I do not choose to adopt that course.

Accordingly, I would affirm the order of the trial court ruling section 9711(a)(2) and (c)(2) unconstitutional.

Chief Justice FLAHERTY joins this dissenting opinion.

1. In fact, this scenario has already arisen. In *Commonwealth v. Givens*, 26 WM 2001, the Commonwealth filed an application for extraordinary relief in which it challenged the common pleas court's ruling that the defense could present testimony as to the victim's family's opposition to the death penalty in that particular case. The defense sought to introduce testimony that the victim's mother did not believe that the defendant was the perpetrator and that the defendant's execution would only intensify the pain she suffered as a result of the loss of her son. Our Court denied the Commonwealth's application for extraordinary relief on April 3, 2001.

NIGRO, Justice, dissenting.

I agree with the trial court that the statutory provisions governing victim impact evidence in the penalty phase of capital cases, 42 Pa.C.S. § 9711(a)(2) & (c)(2), are unconstitutional. While I do not dispute the fact that victim impact evidence may be relevant in sentencing a capital defendant, I take issue with the circumstances and procedures under which Commonwealth juries are allowed to consider such evidence. Contrary to the majority, I believe that the Commonwealth's statutory sentencing scheme in capital cases, as amended to permit the admission of victim impact evidence, violates the Fourteenth Amendment to the United States Constitution. Accordingly, I must respectfully dissent.

In *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the United States Supreme Court held that the Eighth Amendment to the United States Constitution erects no *per se* bar to the admission of victim impact evidence in the penalty phase of a capital case. The Court explained that the prosecution has a legitimate interest in counteracting the mitigating evidence that a defendant presents, and that there is nothing unfair about allowing the jury to consider the harm caused by the defendant at the same time that it considers the defendant's mitigating evidence. *Id.* at 825, 111 S.Ct. 2597. However, the *Payne* Court also recognized that victim impact evidence might be so unduly prejudicial so as to render the trial fundamentally unfair, thereby violating the Due Process Clause of the Fourteenth Amendment. *Id.* at 825, 111 S.Ct. 2597. Thus, instead of establishing bright-line rules regulating the admission of victim impact evidence, the *Payne* Court expressly left to the states the decision of whether to admit victim impact evidence and how to structure its admissibility. *Id.* at 826, 111 S.Ct. 2597.

Following *Payne*, the Pennsylvania General Assembly amended our state's death penalty statute to permit, virtually without qualification, the admission of victim impact testimony at capital penalty hearings. *See* 42 Pa.C.S. § 9711(a)(2), (c)(2). The statute first allows the Commonwealth to present victim impact evidence for any purpose "the court deems relevant

and admissible." *Id.* § 9711(a)(2). Then, without any guidance, the statute instructs the jury that "it shall consider" victim impact evidence if it finds at least one aggravating circumstance and at least one mitigating circumstance. *Id.* § 9711(c)(2). Unlike the majority, I believe that the admission of victim impact evidence in such an unguided fashion, to be used by the jury without any direction whatsoever in balancing aggravating and mitigating factors, violates the fundamental fairness required by the Due Process Clause of the Fourteenth Amendment.

In contrast to the statutory amendments enacted by the General Assembly and endorsed by the majority, I would allow victim impact evidence only where it is relevant to rebut defense evidence introduced as a catch-all mitigating circumstance.[1] Restricting victim impact evidence in this manner is, in the first instance, consistent with this Court's prior case law on such evidence. In *Commonwealth v. Fisher*, 545 Pa. 233, 681 A.2d 130, 146 (1996), this Court concluded that the admission of evidence at the penalty phase of capital trials should be limited to that which is specifically relevant to an enumerated aggravating or mitigating circumstance.[2] Thus, if a defendant chooses to introduce evidence relating to one of the mitigating factors in 42 Pa.C.S. § 9711(e), based on *Fisher*, the Commonwealth is then allowed to present evidence that is relevant to rebutting the defendant's specific mitigating evidence. Applying this reasoning to the instant case, it makes sense to restrict the Commonwealth's use of victim impact evidence to those instances where a defendant has introduced evidence under the catch-all mitigating provision.[3]

1. In my view, victim impact evidence is not even relevant in a capital sentencing proceeding unless the defendant has introduced evidence pursuant to the catch-all mitigating provision, 42 Pa.C.S. § 9711(e)(8). Under § 9711(e)(8), a defendant may present "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense."

2. Although *Fisher* involved a death penalty case decided before 42 Pa.C.S. § 9711 was amended to permit victim impact evidence, the reasoning of *Fisher* is directly applicable here.

3. In his concurring opinion, Justice Saylor recognizes that the majority's decision conflicts with *Fisher*, stating that the majority "abandon[s]

342

Moreover, in *Fisher*, we found that the jury's unguided use of victim impact evidence in the death penalty weighing process was unconstitutional. 681 A.2d at 146–48. The trial court in *Fisher* told the jury to consider the victim impact evidence in deciding whether to impose a life sentence or the death penalty.[4] When the jury asked the court if the victim impact evidence should be considered as an aggravating factor, the court told the jury to consider the evidence "mentally." *Id.* at 148. On appeal, we found that the trial court's "clarifying" instruction did not alleviate the jury's confusion. *Id.* As a result, we concluded that the jury may have considered the testimony as an aggravating circumstance which "interjected an arbitrary and impermissible factor into the sentencing decision of the jury." *Id.* The language and focus of 42 Pa.C.S. § 9711(c)(2), which the majority concludes is constitutional, is essentially the same as the jury instructions we found to be offensive in *Fisher*. Under Section 9711(c)(2), the jury is instructed to consider the victim impact evidence in weighing the aggravating and mitigating factors, but is given no indication of how to properly incorporate the evidence into its deliberation. With so little direction on how the victim impact evidence is to be applied, the jury's discretion is, in effect, left totally unchecked. The amended statute thereby injects the very kind of arbitrary and impermissible factor into the jury's sentencing decision that this Court prohibited in *Fisher*. *See Fisher*, 681 A.2d at 148.[5]

the prevailing interpretation concerning the general operation of the Pennsylvania death penalty statute" as expressed in *Fisher*.

4. The trial court in *Fisher* instructed the jury as follows:

Members of the jury, you have now heard testimony from the victim's mother, [ ]. In order that you may assess meaningfully the Defendant's moral culpability and blameworthiness, this evidence of the specific harm caused by the Defendant should be considered by you during the penalty phase of this trial. The Commonwealth is permitted to and has a legitimate interest in counteracting the Defendant's mitigating evidence. . . .

681 A.2d at 148.

5. The majority also ignores *Commonwealth v. McNeil*, 545 Pa. 42, 679 A.2d 1253 (1996), where this Court rejected the standardless weighing of victim impact testimony in death penalty deliberations. In *McNeil*, we vacated a death sentence where victim impact testimony was

I also believe that by upholding the legislative scheme at issue in the instant case, the majority minimizes the importance of *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and its progeny. In *Furman,* the United States Supreme Court held that where discretion is afforded a jury on a matter so grave as the determination of whether or not a defendant should be executed, that discretion must be suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action. *Id.* at 309–310 (Stewart, J., concurring).[6] Prior to the amendment incorporating the admission of victim impact evidence, the United States Supreme Court found that Pennsylvania's death penalty statute was constitutional precisely because of the restricted and guided process for weighing aggravating and mitigating factors that the statute employed. *See Blystone v. Pennsylvania,* 494 U.S. 299, 303, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990)(holding statute constitutional because it properly accommodated the concerns of *Furman* and allowed the jury to consider all mitigating evidence). By not providing proper guidance for the consideration of victim impact evidence, the statute renders the process unconstitutionally arbitrary and disrupts the careful weighing process required in capital cases under the federal constitution. *See Penry v. Lynaugh,* 492

presented at the penalty hearing. Although *McNeil* was also a pre-amendment case, our concern was an inability to determine how the jury considered the victim impact evidence in weighing the aggravating and mitigating circumstances. *Id.* at 1259. We recognized that the jury may have improperly relied on the victim impact testimony to tip the judicial balance in favor of the death penalty. *Id.*

6. *See Maynard v. Cartwright,* 486 U.S. 356, 362, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988)(channeling and limiting the jury's discretion in imposing a death sentence is a fundamental constitutional requirement); *California v. Ramos,* 463 U.S. 992, 999, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983)(capital sentencing procedures must constrain and guide the jury's discretion to ensure that the death penalty is not meted out arbitrarily and capriciously); *Godfrey v. Georgia,* 446 U.S. 420, 428, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) (states must channel the jury's discretion by clear and objective standards that provide specific and detailed guidance and that facilitate meaningful, rational appellate review of the jury's decision to impose a death sentence); *Gregg v. Georgia,* 428 U.S. 153, 195, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)(dictating the type and extent of discretion the jury must and must not have).

U.S. 302, 326, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989)(unbridled discretion in capital sentencing is unacceptable).

In contrast to Pennsylvania, New Jersey has instituted procedures governing the admission and use of victim impact evidence that, in my opinion, properly channel a jury's discretion in capital sentencing proceedings. Under the New Jersey death penalty statute, the jury is allowed to consider victim impact evidence only if the prosecution has proven at least one statutory aggravating factor beyond a reasonable doubt, and at least one of the jurors finds evidence of the defendant's character or record pursuant to the catch-all mitigating circumstance. N.J.S.A. 2C:11–3c(5)(h). Even if those requirements are met, the jury can only use victim impact statements for determining how much weight to afford the catch-all mitigating circumstance. *Id.* at 2C:11–3c(6). To further help ensure fundamental fairness in capital sentencing proceedings, the New Jersey Supreme Court has also adopted a series of rules governing the admission of victim impact evidence. *See State v. Muhammad*, 145 N.J. 23, 678 A.2d 164, 179–81 (1996). Unlike the Pennsylvania statute, the New Jersey statute does not allow a jury to use victim impact evidence as a general aggravating factor or as a means of weighing the worth of the defendant against the worth of the victim. Instead, the *only* permissible use for victim impact evidence is to assist the jury in determining the appropriate weight to give the catch-all mitigating circumstance. *Id.* at 179.

To correct the constitutional infirmity of Pennsylvania's current statutory scheme, I would, pursuant to this Court's rule-making power, establish a set of procedural safeguards to ensure that the death penalty is meted out with proper guidance and is not imposed in an arbitrary or capricious manner. *See Barclay v. Florida*, 463 U.S. 939, 960, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983)(Stevens, J., concurring in judgment)(capital cases require procedural protections to ensure that the death penalty will be imposed in a consistent and rational manner). Borrowing heavily from the New Jersey scheme, I would adopt the following rules for the use of victim impact testimony at capital trials in this Commonwealth:

1) The Commonwealth must notify a defendant, prior to trial, of its intent to introduce victim impact testimony in the penalty phase.

2) The Commonwealth may introduce victim impact testimony if, and only if, the defendant presents evidence pursuant to the catch-all mitigating provision, 42 Pa.C.S. § 9711(e)(8).

3) Absent special circumstances, only one witness should testify on behalf of the victim's family in order to help the jurors make an informed assessment of the defendant's moral culpability and blameworthiness.

4) The Commonwealth must provide the defendant with the name of the victim impact witness that it plans to call so that defense counsel will have an opportunity to interview the witness prior to his or her testimony.

5) Minors should not be allowed to present victim impact evidence, unless there are no adult survivors and the child is therefore the closest living relative.

6) The victim impact statement must be reduced to writing for the trial court and opposing counsel to review in advance, thereby reducing the potential for prejudicial content.

7) The trial court should hear the proffered testimony outside the presence of the jury to make a preliminary determination as to the admissibility of the victim impact evidence, and to determine if the victim impact witness can present the statement to the jury without an overly emotional display. The witness will be permitted only to read his or her previously approved testimony.

8) The statement must be limited to a general factual profile of the victim, including information regarding the victim's family, employment, education and interests. The testimony can describe generally the impact of the victim's death on his or her immediate family. The testimony should be factual, not emotional, and free of inflammatory comments or references. The trial court should take the opportunity to remind the victim's family

that the court will not permit any testimony concerning the family's characterizations and opinions about the defendant, the crime, or the appropriate sentence. Because of the inherent difficulty of placing any meaningful constraints on its nature and scope, testimony regarding the effect of the victim's death on any "community," however defined, should not be permitted.

9) Any comments about victim impact evidence in closing argument are strictly limited to the previously approved testimony of the witness.

10) Although specific language is not mandated, the trial court must give jury instructions consistent with the above rules in order to ensure the fundamental fairness of a capital sentencing procedure. At a minimum, the trial court must instruct the jury that: a) the Commonwealth must prove an aggravating circumstance beyond a reasonable doubt to all jurors in order for the jury to consider the aggravating circumstance; b) the jury may consider victim impact evidence only if the defendant presents evidence pursuant to the catch-all mitigating provision; and c) victim impact evidence may only be used to determine how much weight should be accorded to the catch-all mitigating circumstance, and *not* to support aggravating circumstances or justify a death sentence.

These safeguards, which are missing from the Pennsylvania statute, would prevent a jury from using victim impact evidence in an arbitrary and capricious manner when deciding whether the death penalty is an appropriate sentence. In my view, when the choice is between life and death, the failure to have such procedural safeguards is incompatible with the command of the Fourteenth Amendment requiring fundamental fairness in capital sentencing proceedings. *See Lockett v. Ohio,* 438 U.S. 586, 605, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978)(plurality opinion)(the risk that the death penalty will be imposed despite factors which may call for a less severe

penalty is unacceptable and incompatible with the Fourteenth Amendment).[7]

Adopting these procedural protections would limit the admissibility of victim impact evidence to those instances where it is relevant to rebutting evidence that a defendant proffers under the catch-all mitigating provision and restrict the jury's use of such evidence to determining how much weight to afford the catch-all mitigating circumstance. Rather than completely removing the trial court's sound discretion in admitting relevant victim impact evidence, these rules simply define the parameters in which victim impact evidence may be introduced and considered by juries. Trial courts would still

7. These procedural safeguards are especially important because the voters of this Commonwealth have not yet approved a victim's rights amendment to specifically mandate that victim impact evidence should be admitted in capital cases. In the last twenty years, thirty-two states have amended their constitutions to include victim's rights amendments. *See* ALA. CONST amend. 557 (1994); ALASKA CONST art. I § 24 (1994); ARIZ CONST art. II, § 2.1 (1990); CAL. CONST. art. I, § 28 (1982); COLO. CONST art. II, § 16a (1992); Conn. CONST art. I, § 8(b) (1996); FLA. CONST. art. I, § 16 (1988); IDAHO CONST. art. I, § 22 (1994); ILL CONST art. I, § 8.1 (1992); IND CONST art. I, § 13(b) (1996); KAN CONST art. XV, § 15 (1992); LA CONST art. I, § 25 (1998); MD. CONST DECL. OF RIGHTS art. 47 (1994); MICH CONST art. I, § 24 (1988); MISS CONST art. 3 § 26A (1998); MO CONST art. I, § 32 (1992); NEB. CONST. art. I, § 28 (1996); NEV CONST art. I, § 8(2) (1996); N.J. CONST. art. I, ¶ 22 (1991); N.M. CONST art. II, § 24 (1991); N.C. CONST. art. I, § 37 (1996); OHIO CONST. art. I, § 10(a) (1994); OKLA. CONST art. II, § 34 (1996); OR CONST. art. I, § 42 (1999); R.I. CONST art. I, § 23 (1986); S.C. CONST art. I, § 24 (1996); TENN CONST art. I, § 35 (1998); TEX CONST art. I, § 30 (1989); UTAH CONST art. I, § 28 (1994); VA. CONST art. I, § 8(A) (1996); WASH CONST. art. I, § 35 (1989); WIS CONST art. I, § 9(m) (1993).

The New Jersey Supreme Court effectively explained the significance of a victim's rights amendment when it stated that the legislative authority to enact New Jersey's victim impact statute is traced directly to the Victim's Rights Amendment. *Muhammad*, 678 A.2d at 174. The court further explained that:

In the absence of the Victim's Rights Amendment, we might have continued to hold that victim impact evidence should not be admitted during the sentencing phase of a capital case. However, the electorate, by passing the Victim's Rights Amendment, which is intended to afford victims whatever rights could be afforded to them without violating the United States Constitution, and the Legislature, by enacting [the victim impact statute] in order to effectuate that amendment, have mandated that victim impact evidence be admitted. *Id.*

maintain the authority and discretion to admit, or not admit, relevant victim impact evidence, provided the defendant has opened the door to such evidence by presenting mitigating evidence under the catch-all provision. In addition, by ensuring that Commonwealth juries are appropriately instructed, we can further alleviate problems with weighing victim impact evidence and facilitate proper appellate review of a jury's decision to impose the death penalty. Restricting a jury's consideration of victim impact evidence in this manner balances the scales of justice during sentencing, allowing the jury to decide the proper punishment based only on evidence that is relevant and in such a way that its discretion is properly channeled.