795 A.2d 340

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Timothy RICE, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 30, 2001.

Decided Feb. 20, 2002.

Reargument Denied April 18, 2002.

184

186

Daniel A. Rendine, Philadelphia, for Timothy Rice.

Lawrence J. Goode, Catherine Marshall, Philadelphia, Robert A. Graci, Harrisburg, for Commonwealth of Pennsylvania.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## OPINION ANNOUNCING THE JUDGMENT
## OF THE COURT

NEWMAN, Justice.

Timothy Rice (Appellant) appeals from the Judgment of Sentence of the Court of Common Pleas of Philadelphia County that sentenced him to death following two convictions for first-degree murder. After reviewing the claims raised by Appellant, we affirm.

## I. *FACTS AND PROCEDURAL HISTORY*

As part of our independent review of the record, we summarize the evidence presented at trial as follows. On September 1, 1996, Labor Day, a group of family members gathered at Jay's Big Shot Bar, which is located on the corner of Narragansett Street and Stenton Avenue in the City of Philadelphia. The family included Bernard Jackson (Jackson), his fiancée Ramona Caldwell, James Jefferson (Jefferson), his fiancée Marie Williams (Williams), Randall Rogers (Rogers), his fiancée Evette Bell, and Gilbert Green (Green).

At approximately 1:00 a.m., Appellant entered the bar with two friends. Appellant and his friends ordered two forty-ounce beers from bartender, Jerry Fluellen. Appellant talked with Sheila Holloway and then moved to an area near the middle of the establishment.

A verbal confrontation erupted between one of Appellant's friends and Green. The situation ended quickly and the two men shook hands. Then, Jefferson joined the group of men. At some point, the bartender asked Appellant and his friends to take the argument outside or drop it. Green told Jefferson that there was not a problem and then walked toward the bar and sat down, turning his back to Appellant and the door that lead to Stenton Avenue (Stenton door). Some of the family members gathered at the bar opposite the Stenton door. Several individuals sat in a row with Rogers to the right of Green and an empty barstool between Rogers and Jackson.

As Appellant backed out of the Stenton door, he pulled a gun from his pocket and fired into the establishment. He shot

Jackson in the back, killing him. Appellant also shot Rogers twice in the lower back. A bullet grazed the chest of Williams, who had returned to her place at the bar just before the shooting. Both Rogers and Williams survived. Jefferson, who had been standing behind Appellant in the doorway of the Stenton door, ran outside. Appellant shot Jefferson in the back, which caused his death.

Appellant ran across the street and got into a car. Then, Appellant proceeded to his sister's apartment at 2835 Winton Street. Someone from Appellant's family called the police. At 3:30 a.m. that same night, police arrived at the apartment and arrested Appellant. Police discovered two spent .357 caliber shells in Appellant's pocket and recovered a .357 magnum revolver, containing three live rounds, from underneath a sofa cushion in the apartment.

Appellant's non-jury trial began on October 6, 1997, and concluded on October 16, 1997, with the trial court finding him guilty of: two counts of first-degree murder,[1] two counts of aggravated assault,[2] one count of recklessly endangering another person,[3] one count of possessing an instrument of a crime,[4] and two counts of violation of the Uniform Firearms Act.[5]

The penalty phase was before a jury, and it began on December 1, 1998, more than one year after the bench trial. New counsel represented Appellant. On December 17, 1998, the jury returned the sentence of death on each of the two murder convictions after finding that the aggravating circumstances outweighed the mitigating circumstances. For each of the first-degree murder charges, the jury found two aggravating circumstances: (1) Appellant caused a grave risk of death to another person and (2) Appellant had been convicted of another murder at the time of the offense at issue. Addition-

1. 18 Pa.C.S. § 2502.
2. 18 Pa.C.S. § 2702.
3. 18 Pa.C.S. § 2705.
4. 18 Pa.C.S. § 907.
5. 18 Pa.C.S. §§ 6106, 6108.

ally, for both convictions, the jury found two mitigating circumstances (1) the capacity of Appellant to appreciate the criminality of his conduct had been substantially impaired and (2) Appellant had allowed himself to be turned over to the police after the murders. The trial court imposed a sentence of death for each first-degree murder conviction and an aggregate consecutive term of twenty to forty years imprisonment on Appellant's remaining charges.

## II. DISCUSSION

### A. THE GUILT PHASE

#### 1. Sufficiency of the evidence

■ Appellant alleges that the evidence was insufficient to sustain his two convictions for first-degree murder. As part of our independent review of the record, we must determine whether the evidence, and all reasonable inferences deducible from that, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all the elements of the offenses beyond a reasonable doubt. *Commonwealth v. Bridges*, 563 Pa. 1, 757 A.2d 859, 864 (2000).

■ To prove first-degree murder, the Commonwealth must show that the defendant acted with the specific intent to kill; that a human being was unlawfully killed; that the person accused did the killing; and that the killing was deliberate. 18 Pa.C.S. § 2502(d); *Commonwealth v. Spotz*, 552 Pa. 499, 716 A.2d 580, 583 (1998), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed.2d 551 (1999). The Commonwealth can prove specific intent to kill where the defendant knowingly applies deadly force to the person of another. *Commonwealth v. Hall*, 549 Pa. 269, 701 A.2d 190, 196 (1997), *cert. denied*, 523 U.S. 1082, 118 S.Ct. 1534, 140 L.Ed.2d 684 (1998). We have also held that the use of a deadly weapon on a vital part of the victim's body is sufficient to establish the specific intent to kill. *Commonwealth v. Walker*, 540 Pa. 80, 656 A.2d 90, 95 (1995), *cert. denied*, 516 U.S. 854, 116 S.Ct. 156, 133 L.Ed.2d 100 (1995).

In challenging his convictions for first-degree murder, Appellant asserts that he shot the victims in this case in self-defense following an argument in a bar. At trial, Appellant testified that a group of men surrounded him and his friends inside the establishment. Appellant stated that he saw Green pull a gun out of his back pocket. Then, after hearing gunshots, Appellant said that he panicked. Appellant testified that at that point he pulled out his gun and fired at his attacker. Consequently, Appellant contends that the Commonwealth failed to prove that Appellant had the specific intent to kill and that he killed with deliberation.

The Commonwealth called twenty witnesses, four of whom saw Appellant fire a gun into a crowded bar. When Appellant testified, he admitted that he pointed his weapon toward people and "shot until [his] gun was empty." (N.T. 10/10/97, p. 159). Appellant shot both of the victims, who were unarmed, in their backs. Additionally, when the police arrested Appellant at his sister's apartment several hours after the shooting, the officers discovered a .357 magnum revolver containing three live rounds and two spent .357 caliber shells in Appellant's pocket. Appellant admitted that the .357 magnum was his gun. Police Officer Abdur–Rahin, of the Firearms Identification Unit of the Philadelphia Police Unit, testified that a bullet found on the floor of the bar was fired from Appellant's gun. Also, Officer Abdur–Rahin stated that a bullet, which had been removed from one of the victims that had survived the shooting, had been fired from Appellant's gun. Based upon our examination of the record, we conclude that the Commonwealth adequately established the specific intent of the Appellant to kill. We hold that the evidence sufficiently supports both of Appellant's convictions for first-degree murder.

## 2. *Weight of the evidence*

Appellant argues that the verdicts are against the weight of the evidence presented at trial. What weight to accord to evidence is exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to

determine the credibility of witnesses. *Commonwealth v. Small,* 559 Pa. 423, 741 A.2d 666, 672 (1999), *cert. denied,* 531 U.S. 829, 121 S.Ct. 80, 148 L.Ed.2d 42 (2000). An appellate court is barred from substituting its judgment for that of the finder of fact. *Commonwealth v. Johnson,* 542 Pa. 384, 668 A.2d 97, 101 (1995), *cert. denied,* 519 U.S. 827, 117 S.Ct. 90, 136 L.Ed.2d 46 (1996). Therefore, we may reverse the decision of the fact-finder only when the verdict is so contrary to the evidence as to shock one's sense of justice. *Commonwealth v. Keaton,* 556 Pa. 442, 729 A.2d 529, 540 (1999), *cert. denied,* 528 U.S. 1163, 120 S.Ct. 1180, 145 L.Ed.2d 1087 (2000).

To demonstrate how the guilty verdicts are shocking to one's conscience, Appellant points to three different areas of inconsistent testimony. First, the testimony of persons who witnessed events outside the bar the night of the shooting conflict. One witness said he chased the shooter through the streets after the incident, while another witness testified that the suspect jumped into a car after firing several shots outside the bar. *See* (N.T. 10/8/97, p. 174); (N.T. 10/9/97, p. 50). Second, Appellant asserts that conflicting evidence exists concerning the appearance of the shooter. Several witnesses testified that the person who opened fire in the bar had a bald head while others testified that he had hair. *See* (N.T. 10/9/97, pp. 7–15, 53–54, 128, 146). Finally, Appellant asserts that ballistics evidence is inconsistent with the theory of the Commonwealth that Appellant shot both victims. Investigators testified that they found gunshot powder residue on Jackson's clothing, but not on Rogers' clothing. (N.T. 10/9/97, pp. 66, 74). Appellant asserts that if he had shot both men, who sat next to each other, then both should have had residue on their clothing.

We conclude, after a review of the entire record, that this claim of Appellant must fail. In making his argument, Appellant concedes that weighing the evidence and assessing witness credibility are tasks exclusively for the finder of fact. Yet, Appellant urges us to abandon this principle and replace the judgment of the finder of fact with our own. This we cannot do. Numerous eyewitnesses saw Appellant open fire

into the bar and even Appellant testified that he had fired his weapon inside the establishment. The verdicts were consistent with the evidence presented at trial and not so contrary to the evidence that they shock one's sense of justice.

### 3. *Ineffectiveness of guilt-phase counsel*

Appellant claims that his guilt-phase counsel acted ineffectively.[6] In this argument, Appellant points to the three major areas of inconsistent testimony that he raises in his weight of the evidence claim, including discrepancies as to what activity had occurred outside of the bar after the shooting, whether the shooter had a bald head on the night of the murders, and the presence of gunpowder residue on the victims' clothing. Appellant asserts that his counsel ineffectively failed to argue these inconsistencies to the finder of fact.

■■■■ In an ineffective assistance of counsel claim, the defendant bears the burden of proving that: "(1) the underlying claim is of arguable merit; (2) counsel's performance was unreasonable; and (3) counsel's ineffectiveness prejudiced defendant." *Commonwealth v. Whitney*, 550 Pa. 618, 708 A.2d 471, 476 (1998), *denial of post conviction relief aff'd.*, 550 Pa. 618, 708 A.2d 471 (1998). The effectiveness of counsel is presumed, and the defendant must prove otherwise. *Commonwealth v. Pierce*, 537 Pa. 514, 645 A.2d 189, 195 (1994).

■■■ Appellant's ineffectiveness claim lacks merit. While Appellant asserts that his attorney failed to argue the inconsistencies in the trial testimony, counsel did in fact raise these points in his closing argument. *See* (N.T. 10/14/97, pp. 39, 53–55) (addressing inconsistencies in testimony regarding what occurred outside the bar); (N.T. 10/14/97, pp. 39, 53, 55)

---

**6.** Appellant failed to raise several issues, which he now presents for our review, in his 1925(b) Statement of Matters Complained of on Appeal and these issues are waived. *See* Pa.R.A.P.1925(b). Despite the waiver, we will address the issues under the relaxed waiver rule of *Commonwealth v. Zettlemoyer*, which applies in direct capital appeals. *See* 500 Pa. 16, 454 A.2d 937, 942 n. 3 (1982), *cert. denied*, 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983); *see also Commonwealth v. Gibson*, 547 Pa. 71, 688 A.2d 1152, 1160 n. 13 (1997), *cert. denied*, 522 U.S. 948, 118 S.Ct. 364, 139 L.Ed.2d 284 (1997).

(highlighting differences in witnesses descriptions as to whether the shooter had a bald head); (N.T. 10/14/97, pp. 35, 58) (discussing the gunpowder residue evidence). Therefore, Appellant's claim relating to the ineffectiveness of his guilt-phase counsel fails.

## B. *THE PENALTY PHASE*

### 1. *Exclusion of notes of testimony*

During his sentencing hearing Appellant sought to introduce the notes of Appellant's testimony from the guilt-phase of his trial. Appellant asserts that the trial court erroneously excluded this testimony, which Appellant sought to offer in mitigation.

The admissibility of mitigation evidence is a matter vested within the sound discretion of the trial court, whose decision can only be reversed by this Court upon a showing of an abuse of discretion.. *See Commonwealth v. Young*, 536 Pa. 57, 637 A.2d 1313, 1322 (1993), *cert. denied*, 511 U.S. 1012, 114 S.Ct. 1389, 128 L.Ed.2d 63 (1994). A defendant may present evidence of mitigating circumstances at the sentencing hearing; however, the evidence must be relevant and admissible. 42 Pa.C.S. § 9711(a)(2); *Young*, 637 A.2d at 1322.

First, Appellant claims that the trial court abused its discretion in excluding the notes of testimony as evidence of Appellant's drug and alcohol impairment the night of the murder.[7] We hold that the testimony was not admissible

7. The trial court did not bar Appellant from testifying during the sentencing hearing as to his impairment during the night of the murders. The court simply ruled that Appellant's notes of testimony could not be offered as proof of impairment without providing the Commonwealth with an opportunity to challenge such evidence. Moreover, the ruling of the trial court regarding the notes of testimony did not prevent Appellant from presenting evidence of his drug and alcohol use. *See* (N.T. 12/11/98, pp. 104, 112) (testimony of drug abuse counselor that Appellant was addicted to alcohol, marijuana, and cocaine prior to murders); (N.T. 12/14/98, pp. 15, 19) (testimony of Appellant's mother that Appellant used drugs and had cocaine in his possession the day before the shootings); (N.T. 12/14/98, pp. 29, 37–38) (testimony of Appellant's father that Appellant had a drug problem and was high on

because it was not relevant. Appellant had testified on direct during his trial that he had gone to the bar the night of the shootings to have a couple of drinks. (N.T. 10/10/97, at p. 151). Appellant stated that he had purchased "forties" [8] to take home and had had "a few beers" at the bar. *Id.* at 151, 167. Appellant never testified that he had consumed any drugs the evening of the murders. Additionally, Appellant did not state that he had been intoxicated that night. The focus of Appellant's testimony involved his claim of self-defense, not his mental-impairment. Even if one can argue that Appellant's testimony is relevant because it indirectly supports Appellant's position that he had been intoxicated during the shootings, the evidence is not admissible because the Commonwealth did not have an opportunity to cross-examine Appellant on this point. "Implicit in the fact that the [death penalty] statute assigns to the defendant the burden of proving mitigating circumstances by a preponderance of the evidence is the understanding that the jury is to assess the evidence for credibility." *Commonwealth v. Abu Jamal,* 521 Pa. 188, 555 A.2d 846, 858 (1989), *cert. denied,* 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 175 (1990). At trial, the Commonwealth cross-examined Appellant on his self-defense claim and not on any possible impairment he may have experienced due to drinking alcohol. Because the Commonwealth was not afforded the opportunity to challenge the veracity of this evidence for the purpose for which Appellant sought to offer it, the notes of testimony were not admissible.

Second, Appellant asserts that the trial court abused its discretion in limiting the admission of the notes of testimony to demonstrate Appellant's character and defense presented at trial to indisputable portions of the testimony. We recognize the privilege of the Commonwealth and Appellant to educate the jury as to the background of the case, especially in light of the fact that the jury did not sit as the fact-finder in this case.

the afternoon of the shootings); (N.T. 12/14/98, pp. 67–68) (testimony of clinical psychologist that Appellant is drug dependent); (N.T. 12/14/98, pp. 98–101) (defense attorney's closing argument that Appellant was under the influence of drugs during the murders).

8. "Forty" is a slang term for a forty-ounce bottle of beer or malt liquor.

*See Commonwealth v. Saranchak,* 544 Pa. 158, 675 A.2d 268, 275 (1996), *cert. denied,* 519 U.S. 1061, 117 S.Ct. 695, 136 L.Ed.2d 617 (1997). In *Saranchak,* we upheld the Commonwealth's presentation of a photograph of the crime scene to the sentencing jury following a bench trial in a capital case. We stated that "the jury must be informed of the history and natural development of the events and offenses with which appellant has been convicted, so that the jury can truly understand the nature of the offenses and appellant's character." *Saranchak,* 675 A.2d at 275. However, we also appreciate that the purpose of the penalty phase in a capital trial is to determine a defendant's sentence and not to once again litigate his or her guilt. 42 Pa.C.S. § 9711(a)(1). Therefore, the trial court was properly within its discretion in this case to limit Appellant's presentation of background information to strictly relevant and indisputable evidence. Pursuant to such a limitation, Appellant declined to introduce his trial testimony. Consequently, Appellant's argument fails.[9]

### 2. Admission of Appellant's violent felony convictions

Appellant claims that the trial court erred in admitting his prior convictions for robbery and criminal conspiracy to support the aggravating circumstance of a significant history of violent felony convictions. *See* 42 Pa.C.S. § 9711(d)(9). After the Commonwealth introduced the above prior convictions, the parties stipulated to their factual basis on the record. In May

9. As noted previously, the trial court did not bar Appellant from presenting evidence regarding Appellant's character or the background of the case, but limited Appellant's presentation to live testimony or indisputable portions of the trial transcript. (N.T. 12/10/98, p. 110). It appears that Appellant wanted to inform the jury that he raised a self-defense claim at trial through the admission of his notes of testimony. While such testimony is arguably irrelevant at the sentencing phase of trial, Appellant did present this information to the jury. *See* (N.T. 12/14/98, pp. 20, 32, 44) (Appellant's mother, father, and sister testified that Appellant had told them that he shot his gun in the bar in self defense after being fired upon by another person); (N.T. 12/15/98, p. 98) (defense counsel stated during closing argument, "was Tim Rice under the influence of drugs that night to the point where maybe he would see somebody with a gun that maybe didn't have a gun or somebody would say something that he could infer was a threat to his life or his physical well-being?").

of 1990, Appellant and another male agreed to rob Henry Blue, a 66 year old man. At around 9:00 p.m., Appellant and his friend approached Blue with a gun. Appellant's friend held the gun, while Appellant threatened to kill Blue if he did not hand over his money. Blue gave the two men his money and they left. While Appellant concedes that his prior convictions are felonies, he claims that they were inadmissible because the conspiracy conviction was not a violent felony and his prior convictions do not bear any factual similarity to Appellant's current convictions for murder in the first-degree.

First, Appellant argues that his conviction for criminal conspiracy is not a violent felony because he merely engaged in a peaceable agreement with a co-conspirator. He maintains that the object of the conspiracy, even if a violent felony itself, does not render the conspiracy violent. Appellant's argument is completely without merit. We have held that a conviction for conspiracy to commit murder is admissible as a violent felony conviction. *Commonwealth v. Reid,* 533 Pa. 508, 626 A.2d 118, 122 (1993). Similarly, a conviction for conspiring to rob a victim at gunpoint is admissible and the trial court did not err.

Second, Appellant argues that his convictions for robbery and conspiracy are not admissible because they are not factually similar to his present murder convictions. Appellant supports his position with our plurality decision in *Commonwealth v. Holcomb,* 508 Pa. 425, 498 A.2d 833 (1985), *cert. denied,* 475 U.S. 1150, 106 S.Ct. 1804, 90 L.Ed.2d 349 (1986).

In the Opinion Announcing the Judgment of the Court in *Holcomb,* Justice Hutchinson states that in finding the aggravating circumstance of a significant history of prior felony convictions, the jury should examine not only the quantity of prior convictions, but also the qualitative relationship between the prior convictions and the present homicide conviction. 498 A.2d at 852. Justice Hutchinson suggests that prior felony convictions must be factually similar to the conviction at issue in order to support the aggravating circumstance. *Id.* This interpretation of the aggravating circumstance by Justice

Hutchinson, accepted by only one other Justice, is not binding precedent upon this court. *See CRY, Inc. v. Mill Service, Inc.,* 536 Pa. 462, 640 A.2d 372, 376 n. 3 (1994). Additionally, we specifically rejected reliance upon *Holcomb* for the argument raised by Appellant in *Commonwealth v. Young,* 536 Pa. 57, 637 A.2d 1313, 1320–1321 (1993), *cert. denied,* 511 U.S. 1012, 114 S.Ct. 1389, 128 L.Ed.2d 63 (1994) (holding that section 9711(d)(9) does not require that prior felony convictions be factually similar to the crime at issue). The evidence of Appellant's two prior convictions was admissible and Appellant is not entitled to relief.[10]

### 3. *Victim impact evidence*

Appellant raises two issues with respect to victim impact evidence, which he claims entitle him to a new sentencing hearing.[11] Appellant asserts that 42 Pa.C.S. § 9711(a)(2) and (c)(2)[12] are unconstitutional and the trial court erroneously instructed the jury on how it should consider the evidence.

**10.** The jury did not find the aggravating circumstance of a significant history of violent felony convictions; therefore, we have addressed only the admissibility of Appellant's convictions and not whether the Commonwealth sufficiently established this aggravating circumstance.

**11.** Appellant asks: "[d]id the trial court err in admitting victim impact evidence at the sentencing phase hearing?" in his statement of questions involved, (Brief of Appellant, at 5), however, he does not mention or develop this issue in his brief. Therefore, Appellant has waived this claim. *See Commonwealth v. LaCava,* 542 Pa. 160, 666 A.2d 221, 229 n. 9 (1995).

**12.** 42 Pa.C.S. § 9711(a)(2) and (c)(2) state:

§ 9711. Sentencing procedure for murder of the first degree
(a) Procedure in jury trials.—
(2) In the sentencing hearing, evidence concerning the victim and the impact that the death of the victim has had on the family of the victim is admissible. Additionally, evidence may be presented as to any matter that the court deems relevant and admissible on the question of the sentence to be imposed. Evidence shall include matters relating to any of the aggravating or mitigating circumstances specified in subsections (d) and (e), and information concerning the victim and the impact that the death of the victim has had on the family of the victim. Evidence of aggravating circumstances shall be limited to those circumstance specified in subsection (d).
* * *
(c) Instructions to jury.—

Recently, this Court addressed the validity of Pennsylvania's statutory provisions permitting the admission of victim impact evidence and the procedures whereby such evidence is admissible. *Commonwealth v. Means*, 565 Pa. 309, 773 A.2d 143 (2001); *Commonwealth v. Natividad*, 565 Pa. 348, 773 A.2d 167 (2001). While we issued plurality opinions in both *Means* and *Natividad*, we note that both cases guide our discussion *infra*. *See generally Marks v. United States*, 430 U.S. 188, 193, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977) (stating that when "a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of [the majority], 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds' "); *CRY, Inc. v. Mill Service, Inc.*, 536 Pa. 462, 640 A.2d 372, 376 n. 3 (1994) (noting that a plurality opinion of this Court lacks the authority of precedent); *McDermott v. Biddle*, 436 Pa.Super. 94, 647 A.2d 514, 524 n. 8 (1994), *rev'd on other grounds*, 544 Pa. 21, 674 A.2d 665 (1996) (stating that for any principle of law expressed in a Majority Opinion to be considered precedent it must command a majority of judges voting both as to the disposition and the principle of law expressed); *Glendale Sch. Dist. v. Feigh*, 99 Pa. Cmwlth. 470, 513 A.2d 1093, 1094 n. 5 (1986), *pet. for allowance of appeal denied*, 515 Pa. 587, 527 A.2d 547 (1987) (noting that a decision of an equally divided Supreme Court is not controlling but may be persuasive).

a. Constitutionality of 42 Pa.C.S. § 9711(a)(2) and (c)(2)

■ First, Appellant challenges the constitutionality of 42 Pa.C.S. § 9711(a)(2) and (c)(2), which permit the introduction of victim impact testimony in the penalty phase of a capital

(2) The court shall instruct the jury that if it finds at least one aggravating circumstance and at least one mitigating circumstance, it shall consider, in weighing the aggravating and mitigating circumstances, any evidence presented about the victim and about the impact of the murder on the victim's family. The court shall also instruct the jury on any other matter that may be just and proper under the circumstances.
As amended, 1995, October 11, P.L. 1064, No. 22 (Special Session No. 1), § 1.

case. Appellant argues that subsections (a)(2) and (c)(2) of section 9711 are unconstitutional because they do not provide any procedure for how the jury should incorporate victim impact testimony into its deliberation. We addressed the constitutional concerns of Appellant in *Means*, where four members of this Court upheld 42 Pa.C.S. § 9711(a)(2) and (c)(2) under both the federal and Pennsylvania constitutions. 773 A.2d at 148–157, 159 (Opinion Announcing the Judgment of Court and Saylor, J., concurring). Because a majority of this Court has concluded that subsections (a)(2) and (c)(2) of section 9711 are constitutionally valid, Appellant is not entitled to relief.

### b. Jury instructions

Additionally, Appellant claims that the trial court erred while instructing the jury on how to consider the victim impact evidence. Appellant asserts that because the trial court instructed the jury on the law of New Jersey [13] and not Pennsylvania, he is entitled to a new sentencing hearing.

A trial court has broad discretion in phrasing its instructions to a jury, and may chose its own wording so long as it clearly, adequately, and accurately presents the law to the jury for its consideration. *Commonwealth v. Ohle*, 503 Pa. 566, 470 A.2d 61, 70 (1983), *cert. denied*, 474 U.S. 1083, 106 S.Ct. 854, 88 L.Ed.2d 894 (1986). Appellate review of a charge must be based on an examination of the instruction as a whole to determine whether it was fair or prejudicial. *Id.*

The Pennsylvania death penalty statute provides that "[t]he court shall instruct the jury that if it finds at least one aggravating circumstance and at least one mitigating circumstance, it shall consider, in weighing the aggravating and mitigating circumstances, any evidence presented about the victim and about the impact of the murder on the victim's family." 42 Pa.C.S. § 9711(c)(2). The Opinion Announcing the Judgement of Court in *Means* set forth a model jury instruction that tracks the language of 42 Pa.C.S. § 9711(c)(2)

13. *See* N.J.S.A. 2C:11–3c(6).

and includes language designed to prevent the possibility of the evidence inflaming the passions of the jury.[14] 773 A.2d at 158–159. While examining the jury instruction given in *Natividad*, three Justices found that the language used[15] was

**14.** The jury instruction in *Means* reads:

The prosecution has introduced what is known as victim impact evidence. Victim impact evidence is not evidence of a statutory aggravating circumstance and it cannot be a reason by itself to impose the death penalty. The introduction of victim impact evidence does not in any way relieve the Commonwealth of its burden to prove beyond a reasonable doubt at least one aggravating circumstance. You may consider this victim impact evidence in determining the appropriateness of the death penalty only if you first find that the existence of one or more aggravating circumstances has been proven beyond a reasonable doubt independent from the victim impact evidence, and if one or more jurors has found that one or more mitigating circumstances have been established by a preponderance of the evidence. Victim impact evidence is simply another method of informing you about the nature and circumstances of the crime in question. You may consider this evidence in determining an appropriate punishment. However, the law does not deem the life of one victim more valuable than another; rather, victim impact evidence shows that the victim, like the defendant, is a unique individual. Your consideration must be limited to a rational inquiry into the culpability of the defendant, not an emotional response to the evidence. The sentence you impose must be in accordance with the law as I instruct you and not based on sympathy, prejudice, emotion or public opinion and not based solely on victim impact.

773 A.2d at 158–159.

**15.** The trial court in *Natividad* instructed the jury as follows:

Now, when voting on the general findings, you are to regard a particular aggravating circumstance as present only if you all agree that it is present. On the other hand, each of you is free to regard a particular mitigating circumstance as present despite what the other jurors believe.

This different treatment of aggravating and mitigating circumstances is one of the law's safeguards against unjust death sentence. [sic] It gives the defendant the full benefit of any mitigating circumstances. It is closely related to the burden of proof requirements. Remember, the Commonwealth must prove any aggravating circumstances beyond a reasonable doubt while the defendant only has to prove mitigating circumstance by a preponderance of the evidence.

Now, members of the jury, you have heard testimony about the victim and about the impact of the killing on the victim's family.

Victim impact is not an aggravating circumstance, may not be so considered and is not a reason to impose the death penalty. Should you find at least one aggravating circumstances and at least one mitigating circumstance, only then may you even consider this testimony and only for the very limited purpose of helping you to

consistent with our model instruction in *Means.* 773 A.2d at
180. The Opinion Announcing the Judgment of Court in
*Natividad* upheld the instruction given in that case because it
"adequately channeled the focus of the jury on concerns
appropriate to its sentencing function and away from arbitrary
and capricious factors." *Id.*

In the present case, the Commonwealth, Appellant's coun-
sel, and the trial court discussed how to instruct the jury
about victim impact evidence during a hearing in December of
1998. The trial court, without the benefit of the decisions of
this Court in *Means* and *Natividad,* expressed concern as to
how to channel the jury's discretion in the consideration of the
evidence. (N.T. 12/1/98, pp. 42–43). During the sentencing
hearing, the trial court instructed the jury before the wit-
nesses testified to the impact of the victims' deaths. The trial
court explained that such evidence is admissible under Penn-
sylvania law. (N.T. 12/11/98, p. 71). Additionally, the judge
instructed the jury that victim impact evidence was neither an
aggravating nor a mitigating circumstance and could not be
used to weigh the worth of Appellant against the worth of the
victims. (N.T. 12/11/98, pp. 71–72). As part of its charge to
the jury prior to its deliberation, the trial court instructed as
follows:

> Now, you heard evidence from four persons, specifically
> victim impact evidence. I will now give you an instruction
> as to how to consider that evidence.
>
> If you unanimously find that the Commonwealth has proven
> at least one aggravating factor beyond a reasonable doubt
> and any of you find at least one mitigating factor which is
> relevant to the defendant's character or record or to the
> circumstances of the offense, and that's what I alluded to
> earlier as the catch-all, then ***you may consider any pre-
> sented victim impact testimony in determining the ap-***

determine whether or not the aggravating circumstance outweigh the
mitigating circumstance. [sic]
 The sentence you impose must be in accordance with the law as I
instruct you and not based on sympathy, prejudice, emotion, or
public opinion and not based on victim impact.
773 A.2d at 180.

*propriate weight to be given to the mitigating catch-all factor.* Keep in mind victim impact testimony cannot be used as a general or specific aggravating factor or as a means of weighing the worth of this defendant against the worth of either or both victims in this case. *Instead, it's [sic] only use is to determine how much weight to attach to the catch all mitigating factor.*

(N.T. 12/16/98, pp. 12–13) (emphasis added).

While the trial court in the present case had broad discretion in wording its instructions to the jury, the trial court failed to present the law accurately to the jury. Because we conclude that Appellant did not experience prejudice due to the erroneous instruction, a new sentencing hearing is not required.

 The trial court did not correctly instruct the jury regarding our victim impact provisions. Pennsylvania law permits the jury to consider victim impact testimony after it finds *any* aggravating circumstance and *any* mitigating circumstance. 42 Pa.C.S. § 9711(c)(2). In contrast, the trial court limited the jury's examination of victim impact evidence until after it found any aggravating circumstance and the catch-all mitigating circumstance. The trial court further instructed the jury to consider the victim impact testimony only in determining how much weight to attach to the catch-all mitigating circumstance.[16]

16. The instruction given by the trial court resembles the language of the New Jersey Victim Impact Statute, which has been upheld against constitutional attack in *State v. Muhammad,* 145 N.J. 23, 678 A.2d 164 (1996). In *Muhammad,* the New Jersey Supreme Court establishes numerous procedural safeguards for the admission of victim impact testimony. *Id.* at 180. While these guidelines are appropriate under New Jersey's statutory provisions, they are not constitutionally required nor dictated by Pennsylvania law. We do not adopt New Jersey's law as our own and conclude that the manner whereby victim impact testimony is presented is best left to the sound discretion of the trial court. *See Means,* 773 A.2d at 154, 158, 160 (Opinion Announcing the Judgement of Court and Saylor, J., concurring); *but see* 773 A.2d at 164–167 (Nigro, J., dissenting) (suggesting rules for the use of victim impact testimony that are based upon the New Jersey scheme).

■ Although the jury instruction in this case was inaccurate, it was not prejudicial. The jury in the present case found two aggravating circumstances and two mitigating circumstances for each first-degree murder conviction. It would have considered the victim impact evidence even if it had received an instruction similar to that set forth in *Means*. *See* 773 A.2d at 158–159. Additionally, the trial court instructed the jury that victim impact testimony was neither an aggravating nor a mitigating circumstance and could not be used to weigh the worth of Appellant against the worth of the victims, which is consistent with Pennsylvania law. The instruction in this case sought to channel the focus of the jury on concerns appropriate to its sentencing function and away from arbitrary and capricious considerations. While the present instruction was contrary to Pennsylvania law, we fail to see how an instruction that was more restrictive on the consideration of victim impact evidence than Pennsylvania law permits was unfair to Appellant. In the present case, the error of the trial court in instructing the jury regarding victim impact evidence was harmless beyond a reasonable doubt and Appellant is not entitled a new sentencing hearing.

### 4. *Jury instructions on mitigating factor*

Appellant argues that the trial court erred when it refused to instruct on the mitigating factor of extreme mental or emotional disturbance at the time of the crime. *See* 42 Pa.C.S. § 9711(e)(2). We conclude that the trial court did not err.

A defendant is entitled to an instruction on a mitigating circumstance only when the defendant has presented some evidence to support such circumstance. 42 Pa.C.S. § 9711(c)(1)(ii). Appellant argues that the testimony of three witnesses, Grace Flannery, Leondra Rice, and Dr. Allen Tepper, warranted an instruction on the extreme mental or emotional disturbance mitigating circumstance.

■ We have reviewed the record and conclude that Appellant failed to present evidence that he had been under the

influence of extreme mental or emotional disturbance at the time of the crime. Grace Flannery, a drug and alcohol abuse counselor, testified that she treated Appellant for drug and alcohol addiction from January through March of 1995. (N.T. 12/11/98, pp. 97–103). The treatment sessions occurred over one year before Appellant committed the crimes at issue and Flannery did not offer any opinion as to Appellant's mental or emotional state on the night of the shootings. Next, Leondra Rice, Appellant's father, testified that Appellant was under the influence of drugs around four or five o'clock in the afternoon the day of the crime. (N.T. 12/14/98, pp. 37–38). Eight hours elapsed between when Mr. Rice saw Appellant and when Appellant fired shots in the bar. Mr. Rice did not testify that Appellant was high at the time of the crime. Finally, Dr. Tepper, the defense's clinical psychologist, testified that Appellant had a lower-than average IQ and was drug dependent, but that he did not exhibit signs of severe mental illness or psychotic disturbance. (N.T. 12/14/98, pp. 56–68). Additionally, Dr. Tepper also indicated that his opinion of the psychological state of Appellant had nothing to do with Appellant's mental state the night of the murders. (N.T. 12/14/98, pp. 129–130, 135). We hold that the trial court did not err by declining to instruct on this mitigating circumstance because Appellant failed to present any evidence that he had been suffering from an extreme mental or emotional disturbance at the time of the crime.

### 5. Admissibility of mitigating evidence

Appellant argues that the trial court erroneously prohibited him from introducing mitigating evidence. Because the trial court did not limit Appellant's ability to present mitigating evidence, this claim must fail.

The admissibility of evidence is solely within the discretion of the trial court and we will reverse on appeal only upon abuse of that discretion. *Commonwealth v. Thomas,* 552 Pa. 621, 717 A.2d 468, 477 (1998), *cert. denied,* 528 U.S. 827, 120 S.Ct. 78, 145 L.Ed.2d 66 (1999). During the penalty phase, the Commonwealth may offer evidence to rebut a

defendant's mitigating evidence of good character. *Common-wealth v. Harris,* 550 Pa. 92, 703 A.2d 441, 451 (1997), *cert. denied,* 525 U.S. 1015, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998) (upholding Commonwealth's introduction of several statements made by an appellant to rebut appellant's character evidence that he was a nice person and amenable to rehabilitation); *Commonwealth v. Abu–Jamal,* 521 Pa. 188, 555 A.2d 846, 858 (1989), *cert. denied,* 498 U.S. 881, 111 S.Ct. 215, 112 L.Ed.2d 175 (1990) (holding that Commonwealth's introduction of state-ments made by appellant and his Black Panther membership to rebut appellant's character evidence that he was a peaceful and genial man).

In the present case, Appellant intended to present evidence to the jury of his kindness in sharing a civil settle-ment award with his family.[17] Appellant also wanted to prevent the Commonwealth from introducing evidence of Ap-pellant's involvement in several stabbings while in prison. During the Commonwealth's case-in-chief at the penalty phase, Appellant moved *in limine* to prevent the Common-wealth from presenting evidence of Appellant's misconduct. The Commonwealth did not attempt to introduce this evidence during its case-in-chief and planned to present these facts only in rebuttal if Appellant presented testimony of his kind and generous character. (N.T. 12/11/98, pp. 8–10). The trial court ruled that if Appellant offered evidence of his good character during his case-in-chief, then the Commonwealth would be allowed to offer evidence of Appellant's bad character during its rebuttal. (N.T. 12/11/98, pp. 11–13). We conclude that the trial court did not abuse its discretion with this ruling. Be-cause Appellant elected not to introduce evidence of his good character, the Commonwealth did not present evidence of his prison misconduct. Consequently, because the trial court did not abuse its discretion and Appellant deliberately chose not

17. Appellant's counsel noted during his opening statement to the penal-ty phase jury, "You'll hear that he was generous with his family. He gave his mom and dad $15,000 and he gave his brothers and sisters each $500 a piece." (N.T. 12/10/98, pp. 128–29).

to present evidence of his good character, we hold that Appellant is not entitled to relief.

### 6. *Prosecutorial misconduct*

Appellant alleges several instances of prosecutorial misconduct and claims that they warrant a new sentencing hearing. Appellant argues that the prosecutor's improper cross-examination of a defense witness engendered hostility among the jury against Appellant.[18] Furthermore, Appellant contends that the prosecutor made several errors during his summation.

#### a. *Cross-examination*

Appellant claims that the prosecutor should not have asked a defense witness during cross-examination about Appellant's receipt of welfare benefits or prior criminal activity. Appellant asserts that income status and how he supported his drug habit were not relevant to any mitigating or aggravating circumstances. He argues such evidence stimulated jury bias toward the Appellant.

Admissible evidence during the penalty phase is not limited to that which supports mitigating or aggravating circumstances, but may encompass any relevant topic to the sentencing of the defendant. 42 Pa.C.S. § 9711(a)(2); *Commonwealth v. Koehler*, 558 Pa. 334, 737 A.2d 225, 243 (1999), *cert. denied*, 531 U.S. 829, 121 S.Ct. 79, 148 L.Ed.2d 41 (2000). The penalty phase is part of the "truth-determining process" that enables the sentencer to discern and apply facts bearing upon the appropriate sentence. *Abu–Jamal*, 555 A.2d at 858. Implicit in the fact that our death penalty statute places a burden upon the defendant to prove mitigating circumstances by a preponderance of the evidence is the understanding that the Commonwealth may challenge the veracity of the defen-

---

18. Appellant failed to object to the alleged improper cross-examination by the prosecutor and technically waived this issue. Nonetheless, we may still reach the merits of the claim pursuant to the relaxed waiver rule in direct appeals of capital cases. *Commonwealth v. Fletcher*, 561 Pa. 266, 750 A.2d 261, 270 (2000), *cert. denied*, 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000).

▮▮▮▮▮▮▮

dant's proof, and the jury is to weigh the evidence. 42 Pa.C.S. § 9711(c)(1)(iii); *id.*

▮▮▮ In the present case, Appellant initially put his receipt of public assistance before the jury during the direct examination of a defense witness, Grace Flannery (Flannery), a drug and alcohol abuse counselor. Flannery has a bachelor's degree in special education with a minor in psychology. She also has a master's degree in criminal justice. She testified that Appellant had been on public assistance when she counseled him for his drug addiction. (N.T. 12/11/98, p. 102). On cross-examination, the prosecutor asked Flannery if she knew how Appellant had supported his drug addiction while he had been on public assistance. (N.T. 12/11/98, p. 119). Flannery responded that she did not know. *Id.* The prosecutor then called to Flannery's attention the place in her report, which was a defense exhibit, where she had recorded that Appellant had supported his habit by selling drugs, robbing people, and working. (N.T. 12/11/98, pp. 120–22).

Appellant sought to introduce mitigating evidence regarding his drug addiction through the testimony and report of Flannery. The prosecutor had the right to challenge the veracity of such evidence and the credibility of the witness asserting such facts. Therefore, the areas that the prosecutor explored were relevant and not explored to create hostility toward the defendant. We conclude that the prosecutor did not act improperly during the cross-examination.

b. *Closing argument*

Appellant challenges two portions of the prosecutor's closing argument. First, Appellant claims that the prosecutor improperly compared his law-abiding life to Appellant's life. Appellant asserts that the prosecutor intended to engender hatred and bias against Appellant through this comparison. Second, Appellant claims that the prosecutor unlawfully commented on Appellant's failure to testify and effectively rendered the jury incapable of delivering a fair verdict.

■■■■ In our review of whether the prosecutor's comments were improper, we must look at the context in which the prosecutor made the statements. *Commonwealth v. Dennis*, 552 Pa. 331, 715 A.2d 404, 413 (1998). The remarks of a prosecutor do not constitute reversible error unless their unavoidable effect would be to prejudice the jury, forming in their minds a fixed bias and hostility toward Appellant such that they could not weigh the evidence objectively and render a true penalty determination. *Commonwealth v. Hackett*, 558 Pa. 78, 735 A.2d 688, 696 (1999), *cert. denied*, 528 U.S. 1163, 120 S.Ct. 1178, 145 L.Ed.2d 1086 (2000). Also, "[a]t the penalty phase, where the presumption of innocence is no longer applicable, the prosecutor is permitted even greater latitude in presenting argument. The prosecutor may 'present argument for or against the sentence of death' and may employ oratorical license and impassioned argument." *Commonwealth v. Washington*, 549 Pa. 12, 700 A.2d 400, 414 (1997), *cert. denied*, 524 U.S. 955, 118 S.Ct. 2375, 141 L.Ed.2d 742 (1998) (quoting *Commonwealth v. Travaglia*, 541 Pa. 108, 661 A.2d 352, 365 (1995), *cert. denied*, 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996)).

■■■■ We conclude that the prosecutor's comments regarding his job and the life of Appellant were proper:

The judge will tell you if you find one aggravating circumstance beyond a reasonable doubt and no mitigating circumstance, then your duty is clear. If you find that there are aggravating circumstances and mitigating circumstance or circumstances, but the aggravating circumstances outweigh the mitigating circumstance, then your duty is clear.

I'm not saying it's an easy duty. People say to prosecutors all the time, parents, my parents, everybody probably, how can you do that for 20 years? It's easy, take an oath to a duty and you do your duty. That's what drives it. That's what drives it. [sic] It doesn't work no other way. It can't work any other way. They swear you in, you take the pledge, because if it worked any other way, we'd have what? We'd have Timmy Rice's law. I feel this way, boom, I shoot

you. I feel that way, I'll do whatever I want, that's what you have. You have anarchy, you have no law.

(N.T. 12/15/98, p. 69). Concerning the explanation regarding the duty of the jury, while it is properly the role of the court to instruct the jury, the prosecutor did not misstate the law. We hold that the explanation was proper. The comment regarding Appellant's behavior was fair since the record showed that Appellant had shot two unarmed individuals in the back. We fail to see how the above comments could have so inflamed the passions of the jury that they could not have rendered a fair sentence.

■ Additionally, Appellant asserts that the prosecutor's comments constituted improper comment on his failure to testify at the penalty phase:

About six people testified for the Defense. Several of them, I'm not going to talk too much about the mother, father, sister, but the only person I heard up here that said anything about remorse was the sister. She looked at you and said, and I don't want to talk too much about this, I want you to spare Timmy's life and I'm sorry for the family. Remorse. He has not raised his head in the last, I don't know, five or six days. This does not equate with remorse.

(N.T. 12/15/98, pp. 80–81). After the prosecutor made the above statement, defense counsel objected, the trial court struck the above remarks, and the court ordered the jury not to consider them. Appellant could not have been prejudiced when the jury did not consider the statements. *See Commonwealth v. Bridges*, 563 Pa. 1, 757 A.2d 859, 883 (2000) (stating that a jury is presumed to have followed the instructions of the trial court). Additionally, even if the jury had considered the prosecutor's comments, we would have rejected Appellant's claim. *See Commonwealth v. Lester*, 554 Pa. 644, 722 A.2d 997, 1009 (1998); *Commonwealth v. Holland*, 518 Pa. 405, 543 A.2d 1068, 1076–77 (1988), *denial of post-conviction relief aff'd.*, 556 Pa. 175, 727 A.2d 563 (1999). This Court has stated:

It is established, however, that the demeanor of a defendant, including his apparent remorse, is a proper factor to be considered by a jury in the sentencing phase of a capital case. Recognizing that the sentencing phase of trial has a different purpose than the guilt determination phase, and that the privilege against self-incrimination and the presumption of innocence has no direct application to the latter phase, this Court has held that comment upon a defendant's failure to show remorse is permitted at least where the comment does not amount to an extended tirade focusing undue attention on the factor of remorse.

*Lester*, 722 A.2d at 1009 (citations omitted).

In the present case, Appellant's demeanor, and his apparent lack of remorse, was a factor that the jury was permitted to consider during the penalty phase. The statements by the prosecutor to the jury regarding Appellant's lack of remorse, which were limited to that quoted above, were proper. The prosecutor's comments do not amount to an impermissible tirade. Therefore, we do not grant Appellant relief on this issue.

### 7. *Ineffectiveness of penalty-phase counsel*

Finally, Appellant argues that his penalty-phase counsel acted ineffectively. Appellant asserts that penalty-phase counsel should have objected to alleged misconduct by the prosecutor and requested an instruction that a sentence of life in prison means life without the possibility of parole.

As set forth previously, the effectiveness of counsel is presumed, and the defendant must prove otherwise. *Commonwealth v. Balodis*, 560 Pa. 567, 747 A.2d 341, 343 (2000), *cert. denied*, 531 U.S. 817, 121 S.Ct. 55, 148 L.Ed.2d 23 (2000). The defendant bears the burden of showing that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's ineffectiveness prejudiced defendant. *Commonwealth v. Scott*, 561 Pa. 617, 752 A.2d 871, 877 (2000), *cert. denied*, 532 U.S. 949, 121 S.Ct. 1419, 149 L.Ed.2d 360 (2001).

214

Neither of Appellant's underlying claims have merit, therefore counsel did not act ineffectively by failing to raise these issues. First, as discussed in the immediately preceding section, the prosecutor did not improperly cross-examine the defense witness regarding Appellant's drug addiction. Thus, defense counsel did not act ineffectively by failing to object during this portion of the prosecutor's cross-examination. Second, a "life means life" or *Simmons* instruction was not warranted in this case. *See Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994). A *Simmons* instruction is required only where the prosecution injects the issue of the defendant's future dangerousness into the case. *Commonwealth v. Williams*, 557 Pa. 207, 732 A.2d 1167, 1186 (1999).[19] Such an instruction is not necessary where the prosecution merely refers to the defendant's past violent acts. *Id.* After reviewing the prosecutor's closing argument in its entirety, we conclude that a *Simmons* instruction was not needed because the prosecutor never touched upon the future dangerousness of Appellant. Defense counsel was not ineffective for failing to request an instruction to which Appellant was not entitled. Appellant's ineffectiveness claims fail.

## III. *CONCLUSION*

We conclude that none of the claims of error raised by Appellant warrant relief. There was sufficient evidence to support the determination of guilt for both murders and sufficient evidence to support the aggravating circumstances found by the jury in imposing the death penalty. After a thorough review of the record, we have determined that the sentences of death were not the product of passion, prejudice, or any other factor. We affirm the verdict and sentences of death imposed upon Appellant, Timothy Rice. Pursuant to 42 Pa.C.S. § 9711(i), we direct the Prothonotary of the Supreme

---

19. A minority of this Court is of the view that a *Simmons* instruction should be given, prospectively, in all capital cases. *See Commonwealth v. Clark*, 551 Pa. 258, 710 A.2d 31 (1998), *cert. denied*, 526 U.S. 1070, 119 S.Ct. 1465, 143 L.Ed.2d 550 (1999).

Court of Pennsylvania to transmit, within ninety days, the complete record of this case to the Governor of Pennsylvania.

Chief Justice ZAPPALA files a concurring and dissenting opinion.

Justice CAPPY files a concurring and dissenting opinion.

Justice NIGRO files a concurring opinion.

Justice SAYLOR concurs in result.

ZAPPALA, Chief Justice, concurring and dissenting.

This author is perplexed by the Opinion Announcing the Judgment of the Court's ability to recognize that the jury instruction regarding victim impact evidence is erroneous, yet find such error to be harmless in the context of a capital sentencing hearing where the sentence of death is imposed. Such a holding results in one down, and how many more defendants to go until the Court solidifies a procedure for the presentation of victim impact evidence that satisfies due process? I fear that day will never come. Accordingly, I dissent from that portion of the Opinion Announcing the Judgment of the Court that affirms Appellant's judgment of sentence and would remand for a new sentencing hearing.[1]

As I warned in my dissenting opinion in *Commonwealth v. Means*, 565 Pa. 309, 773 A.2d 143 (2001), the introduction of victim impact evidence unconstitutionally channels the jury's deliberations toward examining the life of the victim, rather than the criminal act of the defendant. The circumstances of the instant case illustrate my point. Here, four witnesses were called upon to testify on behalf of the two murder victims. The victim impact witnesses testified as to the personal pain they had endured as a result of the murders. They explained in great detail how their daily lives had changed, describing sleepless nights, grim holidays and concerns for some of the children left fatherless by the killings. The Court has great concern for the tragic consequences arising from the commission of a criminal homicide and we are

1. I agree, however, that Appellant's conviction should be affirmed.

sympathetic to the sheer torment suffered by the families of the victims in this case and in many others. We have an obligation, however, to follow the law and adhere to the narrowly crafted sentencing scheme that is essential to avoid the capricious and arbitrary imposition of the death penalty.

The capital sentencing scheme was simply not crafted as a mechanism for an outpouring of victim's grief, no matter how redacted, rehearsed or restricted the manner of presentation may be. The very nature of victim impact evidence is extremely prejudicial and could persuade a fair-minded juror in any capital case to resolve that the perpetrator of such sorrow be sentenced to death. Would the murders at issue be any less egregious if the victims were not upstanding citizens? Should Appellant be executed on the basis that a victim of his crime had children and family members who loved him? Or in the converse, should a perpetrator of a dastardly crime escape the ultimate penalty, that being death, simply because the victim was not the benefactor of friends, family, associates or loved ones? Query, then, where is the middle ground? I would choose life until such is resolved—for the whole purpose of the sentencing scheme, as noted *supra*, is to avoid the capricious and arbitrary imposition of death.

It appears that even the trial judge had concerns regarding misuse of the evidence in this regard as he cautioned the jury that the victim impact testimony can not be used "as a means of weighing the worth of [the] defendant against the worth of either or both victims in this case." N.T. 12/16/98, pp. 12–13. Troubling concerns arise when adequate safeguards are not in place to prevent the jury from disrupting the careful weighing process constitutionally required to be employed during the penalty phase of a capital trial. Here, the Opinion Announcing the Judgment of the Court concedes that the jury was not properly instructed as to how, to consider the evidence, yet concludes that Appellant was not prejudiced thereby. I do not share the belief that the jury is capable of determining how to employ such evidence when the jurists of this Court have difficulty deciphering the same. Appellant should not be sent down the path towards execution with any doubt remain-

ing as to the jury's ability to properly evaluate and weigh the evidence in support of the death penalty.

Accordingly, I would vacate the judgment of sentence of death and remand for a new sentencing hearing.

CAPPY, Justice, concurring and dissenting.

I join that portion of the Opinion Announcing the Judgment of the Court disposing of Appellant's guilt phase claims. I respectfully dissent from the decision of the lead opinion insofar as it affirms the sentence of death. I would remand for a new penalty hearing as I find the trial court's instructions to the jury regarding victim impact evidence erroneous.

In this case, the trial court instructed the jury that victim impact evidence was tied to its consideration of mitigating evidence presented under the mitigating circumstance generically referred to as the "catch-all factor". The "catch-all factor" is codified at 42 Pa.C.S. § 9711(e)(8), and provides for the introduction during the penalty phase of "[a]ny other evidence of mitigation concerning the character and record of the defendant and the circumstances of his offense." The instruction given here stated in relevant part: "you may consider any presented victim impact testimony in determining the appropriate weight to be given to the mitigating catch-all factor." The verbiage used was taken directly from the decision of the New Jersey Supreme Court in *State v. Muhammad*, 145 N.J. 23, 678 A.2d 164 (1996).

In *Muhammad*, the New Jersey Supreme Court deliberated the constitutionality of a provision in the New Jersey Death Penalty Statute permitting the introduction of victim impact testimony. The New Jersey statute specifically links victim impact testimony to testimony concerning the character of the defendant:

When a defendant at a sentencing proceeding presents evidence of the defendant's character or record pursuant to subparagraph (h) of paragraph (5) of this subsection [ (5)(h) reads: "Any other factor which is relevant to the defendant's character or record or to the circumstances of the

offense."], the State may present evidence of the murder victim's character and background and of the impact of the murder on the victim's survivors. If the jury finds that the State has proven at least one aggravating factor beyond a reasonable doubt and the jury finds the existence of a mitigating factor pursuant to subparagraph (h) of paragraph (5) of this subsection, the jury may consider the victim and survivor evidence presented by the State pursuant to this paragraph in determining the appropriate weight to give mitigating evidence presented pursuant to subparagraph (h) of paragraph (5) of this subsection. As used in this paragraph "victim and survivor evidence" may include the display of a photograph of the victim taken before the homicide.

N.J.S.A. 2C:11–3c(6). The *Muhammad* court upheld the constitutionality of this provision and approved the use of jury instructions that enabled consideration of victim impact testimony as linked to testimony relevant to the character of the defendant. The decision in *Muhammad* was tied to the nature of the statutory scheme drafted by the New Jersey Legislature.

In *Commonwealth v. Means,* 565 Pa. 309, 773 A.2d 143 (2001), this court considered the constitutionality of Pennsylvania legislation at 42 Pa.C.S. § 9711(a)(2), and (c)(2), permitting victim impact testimony in capital cases. Our review focused on the details of the statutory scheme as developed by the Pennsylvania legislature.

The Pennsylvania provision provides:

In the sentencing hearing, evidence concerning the victim and the impact that the death of the victim has had on the family or the victim is admissible. Additionally, evidence may be presented as to any matter that the court deems relevant and admissible on the question of the sentence to be imposed. Evidence shall include matters relating to any of the aggravating or mitigating circumstances specified in subsections (d) and (e), and information concerning the victim and the impact that the death of the victim has had on the family of the victim. Evidence of aggravating cir-

cumstances shall be limited to those circumstances specified in subsection (d).

* * *

The court shall instruct the jury that if it finds at least one aggravating circumstance and at least one mitigating circumstance, it shall consider, in weighing the aggravating and mitigating circumstances, any evidence presented about the victim and about the impact of the murder on the victim's family. The court shall also instruct the jury on any other matter that may be just and proper under the circumstances.

42 Pa.C.S. § 9711(a)(2) and (c)(2).

The Pennsylvania statute is distinct from the New Jersey statute. The Pennsylvania statute does not intend victim impact evidence to be considered by the jury as a direct link and counterweight to mitigation evidence of the character of the accused. The legislative scheme in Pennsylvania permits a jury to consider victim impact evidence as part of the general deliberative process in reaching a conclusion on the moral culpability of a particular defendant. *Means*, 773 A.2d at 156 and 159.

Four justices joined in the opinion finding that the Pennsylvania statutory scheme was constitutionally sound as written.[1] This court crafted a proposed jury instruction directing that victim impact testimony be considered in the overall scheme of concerns properly utilized by the jury in reaching a decision as to the appropriate penalty, reflecting the unique circumstances of the particular case. That instruction is as follows:

The prosecution has introduced what is known as victim impact evidence. Victim impact evidence is not evidence of a statutory aggravating circumstance and it cannot be a

1. The Opinion Announcing the Judgment of the Court was joined by Justice Castille, and Justice Newman; Justice Saylor filed a concurring opinion, joining that portion of the Opinion Announcing the Judgment of the court that pertains to the discussion of victim impact testimony herein. One of the dissenting Justices, Justice Nigro, opined that victim impact testimony should be tied to the "catch-all factor" under the Pennsylvania approach. (*Means*, 773 A.2d at 161, Nigro, J., dissenting).

reason by itself to impose the death penalty. The introduction of victim impact evidence does not in any way relieve the Commonwealth of its burden to prove beyond a reasonable doubt at least one aggravating circumstance. You may consider this victim impact evidence in determining the appropriateness of the death penalty only if you first find that the existence of one or more aggravating circumstances has been proven beyond a reasonable doubt independent from the victim impact evidence, and if one or more jurors has found that one or more mitigating circumstances have been established by a preponderance of the evidence. Victim impact evidence is simply another method of informing you about the nature and circumstances of the crime in question. You may consider this evidence in determining an appropriate punishment. However, the law does not deem the life of one victim more valuable than another; rather, victim impact evidence shows that the victim, like the defendant, is a unique individual. Your consideration must be limited to a rational inquiry into the culpability of the defendant, not an emotional response to the evidence. The sentence you impose must be in accordance with the law as I instruct you and not based on sympathy, prejudice, emotion or public opinion and not based solely on victim impact.

*Means,* 773 A.2d at 158–59. In the related case of *Commonwealth v. Natividad,* 565 Pa. 348, 773 A.2d 167 (2001), an instruction similar in scope to the language proposed in *Means* was approved.

The Opinion Announcing the Judgment of the Court acknowledges that the charge given in this case reflects the balancing approach of New Jersey, rather than the concerns that prompted the legislation in Pennsylvania. However, the lead opinion finds no prejudice to the defendant as it concludes that the charge as given was "more restrictive on the consideration of victim impact evidence than Pennsylvania law permits." (Lead slip opinion at 29). I respectfully disagree with this conclusion.

Unlike the lead opinion, I do not assess the Pennsylvania and New Jersey victim impact statutes to be more or less restrictive than the other. Rather, I read the two statutes as offering distinct solutions to the question of how victim impact evidence should enter the deliberative process. The statutes reflect critical differences. Under the New Jersey approach, victim impact testimony can only be introduced in a case where the defendant has chosen to present evidence of his or her own character as a factor mitigating against the imposition of death. Thus, in the New Jersey system, a defendant can preclude introduction of victim impact testimony by choosing to forgo presentation of character testimony in mitigation.

In distinct contrast, in Pennsylvania victim impact evidence is not viewed as a counterweight to evidence of the defendant's character. Instead, victim impact evidence is introduced as part of the texture of the case: it provides the jury with an identity for the victim and helps to foster a complete understanding of the foreseeable consequences of the defendant's actions. Thus, in Pennsylvania, a defendant need never weigh the Hobson's choice of forgoing relevant mitigation evidence in an effort to prohibit introduction of victim impact testimony.

The two approaches reflect conscious, yet differing, choices as to how the concept of victim impact evidence should be introduced within the deliberative process. In my opinion, the Pennsylvania approach is not more restrictive than the New Jersey approach. and neither confers any special benefit on a capital defendant. Nor can I agree with the conclusion of the majority that the New Jersey approach somehow offers a greater benefit to the defendant in a capital case.

Thus, I cannot conclude that by following the New Jersey approach in this case, the trial court caused no prejudice to the defendant. I therefore disagree with the lead opinion's conclusion that the error was harmless. The Pennsylvania legislature made a decision as to the manner in which victim impact testimony should enter into a jury's deliberation in a capital case. This court found that chosen approach constitutionally sound in *Means*. As the charge given herein does not reflect the proper deliberative use of victim impact testimony

as intended by the statutory enactment at 42 Pa.C.S. § 9711(a)(2), upholding the instruction as given would contradict with the intended scheme of victim impact testimony our legislature designed. For this reason I would remand this case for a new penalty hearing with instructions to the jury consistent with those proposed in *Means* and approved in *Natividad.*

Accordingly, as to the penalty portion of the Opinion Announcing the Judgment of the Court, I dissent.

NIGRO, Justice, concurring.

I agree with the conclusion of the Opinion Announcing the Judgment of the Court ("Opinion Announcing the Judgment") that the Commonwealth presented sufficient evidence beyond a reasonable doubt to support Appellant's convictions for first-degree murder. I further agree with the Opinion Announcing the Judgment that none of the claims of error raised by Appellant warrant relief. Thus, I join the Opinion Announcing the Judgment in affirming the verdict and sentences of death imposed upon Appellant, and write separately merely to address the jury instruction given in this case regarding victim impact testimony.

For the reasons more fully explained in my dissenting opinion in *Commonwealth v. Means,* 565 Pa. 309, 773 A.2d 143, 162–67 (2001), I believe that Pennsylvania's statutory provisions governing victim impact evidence in the penalty phase of capital cases, 42 Pa.C.S. §§ 9711(a)(2) & (c)(2), violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. Despite my continuing belief that this statutory scheme is constitutionally infirm, I recognize that a majority of this Court has concluded that 42 Pa.C.S. §§ 9711(a)(2) & (c)(2) are constitutionally valid. *See* Majority Opinion at. 351; *Means,* 773 A.2d at 148–57, 159 (Opinion Announcing the Judgment of the Court and Saylor, J., concurring). I therefore am compelled to concur with the lead opinion's conclusion that Appellant's claims regarding victim impact evidence, including his constitutional challenge to 42 Pa.C.S. §§ 9711(a)(2) & (c)(2), must fail.

In my dissent in *Means,* I set forth a series of procedural safeguards that would, in my view, prevent a jury from using victim impact evidence in an arbitrary and capricious manner when deciding whether the death penalty is an appropriate sentence. *Means,* 773 A.2d at 165–66 (Nigro, J., dissenting). In doing so, I borrowed heavily from the procedures adopted by New Jersey for use in its capital sentencing scheme. *Means,* 773 A.2d at 165 (Nigro, J., dissenting); *see* N.J.S.A. 2C:11–3c(6); *State v. Muhammad,* 145 N.J. 23, 678 A.2d 164, 179–81 (1996). I also noted my belief that a jury instruction consistent with these proposed safeguards should be given to ensure the fundamental fairness of a capital sentencing proceeding. *Means,* 773 A.2d at 166 (Nigro, J., dissenting). In the instant case, the Opinion Announcing the Judgment finds that the jury instruction was based on New Jersey law rather than Pennsylvania law. Although the Opinion Announcing the Judgment ultimately concludes that the instruction was not prejudicial to Appellant, and finds no error for that reason, I would affirm the instruction on the basis that it was consistent with the scheme I suggested in *Means.*